The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WORLD ASSOCIATION OF ICEHOCKEY
PLAYERS UNIONS NORTH AMERICA
DIVISION, et al.

              Plaintiffs,

    v.

NATIONAL HOCKEY LEAGUE, et al.,

              Defendants.

Case No. 2:24-cv-2135

**CHL DEFENDANTS'
MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR:
March 13, 2025**

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    A.    The Canadian Hockey League ............................................................................... 2

    B.    The Québec Maritimes Junior Hockey League ...................................................... 3

    C.    Related Canadian Litigation ................................................................................... 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.    The FTAIA bars Plaintiffs' foreign injury claims. ............................................................ 6

    A.    Plaintiffs allege foreign injuries involving foreign commerce. ............................. 8

    B.    The CHL Defendants' conduct is not "import commerce." ................................. 11

    C.    Plaintiffs cannot rely on the domestic effects exception to the FTAIA ............... 12

II.    Principles of international comity favor dismissal ............................................................ 13

III.    The Court should dismiss the QMJHL and Non-Corporation OHL Defendants ............. 14

    A.    The QMJHL does not have "minimum contacts" with the United States ........... 16

    B.    The claims do not "arise from" the QMJHL's contacts with the U.S. ................. 19

    C.    Personal jurisdiction over the QMJHL would not be reasonable. ........................ 21

CONCLUSION .................................................................................................................. 23

CERTIFICATION OF CONFERRAL ................................................................................. 24

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcabes v. Capella Hotel Grp. LLC*,
 2015 WL 12697714 (C.D. Cal. July 8, 2015)......................................................16

*Alperin v. Vatican Bank*,
 410 F.3d 532 (9th Cir. 2005) ............................................................................19

*Asahi Metal Indus. Co. v. Superior Ct.*,
 480 U.S. 102 (1987)......................................................................................15, 22

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...........................................................................................5

*Bailey v. DynCorp Int'l FZ-LLC*,
 2012 WL 112867 (D. Or. Jan. 11, 2012) ...........................................................18

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...........................................................................................5

*Biocad JSC v. F. Hoffmann-La Roche*,
 942 F.3d 88 (2d Cir. 2019)................................................................................11

*Boschetto v. Hansing*,
 539 F.3d 1011 (9th Cir. 2008) ............................................................................5

*Burgess v. Michigan State Univ.*,
 84 Wn. App. 1012 (1996) ..................................................................................18

*California Clippers, Inc. v. U.S. Soccer Football Ass'n*,
 314 F. Supp. 1057 (N.D. Cal. 1970) ..................................................................15

*In re Capacitors Antitrust Litig.*,
 2018 WL 4558265 (N.D. Cal. Sept. 20, 2018) ........................................5, 9, 10, 12

*Carcillo v. Canadian Hockey League*,
 Ontario Superior Court of Justice, No. CV-20-642705-00CP ..................................4

*Caruth v. Int'l Psychoanalytical Ass'n*,
 59 F.3d 126 (9th Cir. 1995) ...........................................................................21, 22

*Cas. Assurance Risk Ins. Brokerage Co. v. Dillon*,
 976 F.2d 596 (9th Cir. 1992) .............................................................................22

*CollegeSource, Inc. v. AcademyOne, Inc.*,
 653 F.3d 1066 (9th Cir. 2011) ...........................................................................21

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - ii

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ...........................................................................21

*D'Augusta v. Am. Petroleum Inst.*,
    117 F.4th 1094 (9th Cir. 2024) ........................................................................15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ......................................................5, 6, 10, 12, 13

*Empagran S.A. v. F. Hoffmann-LaRoche,Ltd.*,
    417 F.3d 1267 (D.C. Cir. 2005) .......................................................................13

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004) ...........................................................................6, 7, 8, 14

*Greco v. Northwell Health, Inc.*,
    2022 WL 533047 (E.D. Wash. Feb. 22, 2022) ................................................15

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ...........................................................................5

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023) ..........................................................................20

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    452 F. Supp. 2d 555 (D. Del. 2006) .................................................................12

*Karsten Mfg. Corp. v. U.S. Golf Ass'n*,
    728 F. Supp. 1429 (D. Ariz. 1990) ..................................................................15

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
    725 F.3d 718 (7th Cir. 2013) ...........................................................................15

*Latulippe v. Canadian Hockey League*,
    Superior Court of Québec, No. 200-06-000258-239 .........................................5

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395 (2d Cir. 2014).............................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................................6

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ...........................................................................13

*Mohr v. NHL*,
    2021 FC 488 (May 27, 2021)........................................................................4, 14

*Mohr v. NHL*,
    2022 FCA 145 (Aug. 17, 2022) .........................................................................4

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - iii

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ........................................................................5

*In re Optical Disk Drive Antitrust Litig.*,
    2017 WL 11513316 (N.D. Cal. Dec. 18, 2017) ...............................................9

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ................................................................ *passim*

*Reebok Int'l Ltd. v. McLaughlin*,
    49 F.3d 1387 (9th Cir. 1995) ......................................................................22

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal 2007) ...............................................8, 9, 10, 13

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
    65 F.4th 1012 (9th Cir. 2023) ......................................................5, 7, 16, 19

*Sarkis v. Lajcak*,
    425 Fed. App'x. 557 (9th Cir. 2011) .......................................................17, 18

*Smith v. NaphCare Inc.*,
    2023 WL 2477892 (W.D. Wash. Mar. 13, 2023) ...........................................19

*In re Static Random Memory (SRAM) Antitrust Litig.*,
    2010 WL 5477313 (N.D. Cal Dec. 31, 2010) ..................................................8

*Subspace Omega LLC v. Amazon Web Servs.*,
    2024 WL 5202517 (W.D. Wash. Dec. 23, 2024) ...........................6, 9, 10, 12

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ......................................................................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2008 WL 2219837 (N.D. Cal May 27, 2008) .................................................10

*Van Steenwyk v. Interamerican Mgmt. Consulting Corp.*,
    834 F. Supp. 336 (E.D. Wash. 1993) ............................................................18

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) ......................................................................16

*Will Co. v. Lee*,
    2023 WL 2837204 (W.D. Wash. Apr. 7, 2023) ..............................................22

*World Ass'n of Icehockey Players Unions N. Am. Div. v. NHL, et al.*,
    2024 WL 4893266 (S.D.N.Y. Nov. 26, 2024) ......................14, 15, 19, 20

*World Skating Fed'n v. Int'l Skating Union*,
    357 F. Supp. 2d 661 (S.D.N.Y. 2005) ...........................................................15

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ...................................................................................20

**Statutes**

Clayton Act, 15 U.S.C. §§ 12-22 ....................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(2) ..................................................................5

Federal Rule of Civil Procedure 12(b)(6) ..................................................................5

Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ............................... *passim*

# INTRODUCTION

For decades, the Canadian Hockey League and its member leagues and clubs have provided developmental junior hockey opportunities to promising young players. Plaintiffs invoke the U.S. antitrust laws to challenge those longstanding and procompetitive operations, seeking treble damages and injunctive relief on behalf of all CHL players. But the CHL, its member leagues, and 51 of its 60 clubs—85 percent of the teams and their players—are based and operate in Canada, and thus 85 percent of Plaintiffs' injuries and resulting claims are foreign in nature. The Foreign Trade and Antitrust Improvement Act ("FTAIA") bars those claims, and principles of international comity counsel against adjudicating the remainder. The Court also lacks personal jurisdiction over at least 23 of the CHL Defendants.

1. Accepting Plaintiffs' allegations as true, it is plain that the vast majority of their claims—those involving players on the CHL's 51 clubs in Canada—involve foreign commerce that does not have "direct, substantial, and reasonably foreseeable effects" on U.S. commerce that "give rise to" Plaintiffs' alleged foreign antitrust injuries. Purported injuries to players on Canadian clubs necessarily occurred outside the United States. Plaintiffs did not—and cannot—allege that those foreign injuries were proximately caused by *U.S. effects* of the alleged "transnational" conspiracy. As a matter of law, the FTAIA bars WAIPU's request for foreign injunctive relief, the foreign injury claims of all putative class members, and Plaintiff DiLaura's claims, and limits Plaintiff Gould's claims to the little over a season in which he played on a U.S.-based CHL team.

2. This Court does not need to take up the small remnants of this case not barred by the FTAIA. Under principles of international comity, Plaintiffs' case belongs in Canada. Canadian courts have already rejected a competition challenge to the CHL's conduct, and Plaintiffs rely on pleadings in ongoing Canadian lawsuits with injury claims over conduct alleged in the Complaint.

3. One of the CHL's member leagues, the QMJHL, operates entirely within Canada. The QMJHL and its member clubs do not have the necessary minimum U.S. contacts for personal jurisdiction; hauling them across the continent and into this Court would violate due process.

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 1

# BACKGROUND

## A.    The Canadian Hockey League

Headquartered in Etobicoke, Ontario, the CHL is a developmental hockey league for 16–20 year-old players. (Compl. ¶ 83). The CHL has three Member Leagues—the Québec Maritimes Junior Hockey League ("QMJHL"), the Ontario Hockey League ("OHL"), and the Western Hockey League ("WHL")—that operate out of Québec, Ontario, and Alberta, Canada, respectively. (*Id.* ¶¶ 4, 37, 84, 107, 128). The CHL and its Member Leagues are each Canadian not-for-profit corporations. (*Id.* ¶¶ 83, 84, 107, 128).

The CHL Member Leagues organize regular season and league playoff games, develop and enforce rules, manage educational scholarship programs, organize annual player entry drafts, and coordinate player trades. (*Id.* ¶ 3). All of this is done in Canada.

There are 60 CHL clubs across the three Member Leagues; 51 are in Canada. (*Id..* ¶¶ 85–106, 108–127, 129–146). Each club plays its home games in its local arena and plays away games at the host club's local arena. (*Id.*) Thus, 85 percent of CHL players—those on the 51 Canadian-located teams (out of 60 total teams)—live, train, and play their home games (and most, or in the case of the QMJHL, all, of their away games) in Canada. (ECF 1-2, ¶¶ 16, 17, 33).

There are about 1,500 CHL players. (Compl. ¶ 153). Each club selects players through an annual "draft" (*id.* ¶ 187), after which the drafting club invites its selected players to move to that club's location and play for the team. (*Id.* ¶ 213). Players who accept sign an SPA with the club, and train, play, and live in the club's local community. (*Id.* ¶ 202; ECF 1-1, ¶ 68). For example, Plaintiffs Gould and DiLaura played for multiple CHL teams, predominately in Canada. To the extent that DiLaura played in the CHL during the limitations period, he did so in Swift Current, Saskatchewan. (Compl. ¶¶ 77, 79). Gould first entered the CHL in 2021 after being drafted by the Tri-City Americans of Kennewick, Washington in the 2020 WHL draft; he played for Tri-City for 2021 and the start of 2022. (*Id.* ¶ 71). He played the remainder of his CHL career with the Prince Albert Raiders in Saskatchewan, before moving to a different league in Alberta. (*Id.* ¶¶ 71, 74).

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Plaintiffs challenge under the U.S. antitrust laws rules agreed to among the CHL's Member Leagues about player drafts, player benefits, and limitations on how and when players can change teams. They allege that the purpose and effect of these agreements is to "artificially suppress labor costs." (*Id.* ¶ 45). Specifically, Plaintiffs allege that player compensation is fixed at a monthly stipend set by each Member League. (*Id.* ¶ 228). As alleged in the Complaint, that compensation is paid by each club to players on its roster pursuant to each player's SPA with that club. (*Id.* ¶ 225).

Unlike participants in most junior hockey leagues, players who join a CHL club receive no-cost lodging, care, education, and training during their tenure, a stipend for living expenses, and eligibility for post-tenure higher education scholarships. (*See, e.g.,* ECF 42-4 at Art. 14, 16; ECF 42-5 at pp. 2–3). Ignoring those provisions, Plaintiffs contend that these arrangements are antitrust violations that result in "lower compensation" to the players. (*See, e.g.*, *id.* ¶¶ 322–23, 334). Thus, under Plaintiffs' own theory, 85 percent of CHL players (those on the 51 Canadian-based CHL clubs) were allegedly underpaid *in Canada* as a result of agreements with Canadian organizations. Plaintiffs also allege injury to players from the rules limiting player movement between teams (*e.g.*, *id.* ¶¶ 184, 222, 300, 303); taking those allegations as true, those injuries, too, occurred primarily in Canada.

### B. The Québec Maritimes Junior Hockey League

The QMJHL is a wholly-Canadian league consisting of 18 developmental hockey clubs "located in Québec and the Atlantic Provinces of Canada." (*Id.* ¶ 153). QMJHL hockey operations take place exclusively in Canada. Neither the QMJHL nor any of its clubs have offices, own or lease property, have a bank account, or are licensed to do business, in the United States; pay U.S. taxes; or have significant contracts with U.S. entities. (Zehmer Decl. Ex. 1, ¶¶ 3, 4, 7–10; Exs. 2–19, ¶¶ 3, 5–8).

The QMJHL clubs recruit players primarily from Canada, through a draft that the QMJHL organizes and executes from Québec. (Zehmer Decl. Exs. 2–19, ¶¶ 10–11). The QMJHL players

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 3

live, train, play hockey, and study in Canada. (*Id.* ¶¶ 12, 14). The teams play all pre-season, regular season, and league playoff games in Canada. (Zehmer Decl. Ex. 1, ¶ 11). The small number of QMJHL players from the United States sign and execute player agreements with QMJHL clubs in Canada (*id.* ¶ 15), and live, train, play, and study in Canada, just like their Canadian teammates. (As of June 2024, eleven of the eighteen QMJHL clubs had not signed a single U.S. player since January 1, 2020. (Zehmer Decl. Exs. 2–19, ¶ 9)).

### C. Related Canadian Litigation

Plaintiffs rely heavily on materials from Canadian litigation matters involving similar parties and claims. (*E.g.*, Compl. ¶¶ 2, 3, 157, 263, 286, 290, 303). Given Plaintiffs' claims for extraterritorial relief, the nature of the related Canadian litigation bears description. At least three superior provincial courts, Canada's Federal Court, Federal Court of Appeals, and the Supreme Court of Canada have adjudicated, or are currently adjudicating, matters against the CHL Defendants about the type of competition and player-condition arguments that Plaintiffs assert.

***Mohr***. The Supreme Court of Canada recently disposed of a competition class action brought against the CHL Defendants (and other hockey leagues, including the NHL) on behalf of CHL players. (ECF 136-19 (*Mohr v. NHL*, 2021 FC 488 (May 27, 2021), *aff'd* 2022 FCA 145 (Aug. 17, 2022), *application for leave to appeal dismissed*, SCC File No. 40426)). The *Mohr* plaintiffs alleged a conspiracy to limit major junior players' career opportunities and compensation. The Federal Court held that the alleged conduct was not anticompetitive conduct in violation of the Canadian Competition Act; the Federal Court of Appeal upheld that ruling on appeal; and the Supreme Court of Canada subsequently denied leave to appeal. (*Id.*)

***Carcillo*** and ***Latulippe***. Two pending Canadian cases intersect with the player abuse allegations in the Complaint. *Carcillo v. Canadian Hockey League*, which the Complaint cites extensively, is a pending matter against the CHL, its Member Leagues, and clubs on behalf of a putative class of CHL players. (Zehmer Decl. Ex. 20 (Ontario Superior Court of Justice, No. CV-20-642705-00CP)). The claims seek to recover damages for all current and former players who

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 4

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

purport to have suffered injury from abuse between May 8, 1975 and the present. (ECF 1-2, ¶ 6). Similarly, *Latulippe v. Canadian Hockey League* is a class action against the CHL, the QMJHL, and QMJHL clubs pending in the Superior Court of Québec. (Zehmer Decl. Ex. 21 (Superior Court of Québec, No. 200-06-000258-239)). The *Latulippe* plaintiffs seek recovery on behalf of all players from July 1, 1969 for injuries sustained while playing in the QMJHL from hazing and other abusive conduct—conduct that Plaintiffs allege here in their Complaint.

## LEGAL STANDARD

1. Under Rule 12(b)(6), a court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a complaint fails to plausibly allege that foreign injury claims fall outside the FTAIA or meet its exception, a court should dismiss those claims as a matter of law. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008); *In re Capacitors Antitrust Litig.*, 2018 WL 4558265, at *6 (N.D. Cal. Sept. 20, 2018).

2. International comity is a doctrine of prudential abstention that "counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (citation omitted). On a motion to dismiss, courts consider, *inter alia*, the strength of the U.S. interests, strength of the foreign government's interests, and adequacy of the alternative forum. *Id.* at 603.

3. Under Rule 12(b)(2), a plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). It must do so separately for each defendant, *see Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003), and for each claim, *see San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035 n.13 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023). Personal jurisdiction analysis has both a statutory

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1  and a constitutional component. If plaintiffs establish a statutory basis, the Court undertakes a two-

2  step constitutional analysis asking whether exercise of personal jurisdiction would comport with

3  due process, and if the exercise of jurisdiction would be reasonable. *Picot v. Weston*, 780 F.3d

4  1206, 1211 (9th Cir. 2015).

5  **ARGUMENT**

6  **I.    The FTAIA bars Plaintiffs' foreign injury claims.**

7  Plaintiffs challenge alleged agreements among Canadian developmental hockey leagues

8  located in Canada, and primarily claim injuries from the effects of those agreements on junior

9  hockey players playing in Canada. But "American antitrust laws do not regulate the competitive

10  conditions of other nations' economies." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

11  U.S. 574, 582 (1986). To do so would violate the principles of international comity: "Why should

12  American law supplant, for example, Canada's … own determination about how best to protect

13  Canadian … customers from anticompetitive conduct engaged in significant part by Canadian …

14  companies?" *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165 (2004) (*Empagran*

15  *I*).

16  The Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, "clarifies that U.S.

17  antitrust laws concern the protection of *American* consumers and *American* exporters, not foreign

18  consumers or producers." *In re DRAM Antitrust Litig.*, 546 F.3d at 986 (quotation marks and

19  citation omitted). The FTAIA "initially lays down a general rule placing all (non-import) activity

20  involving foreign commerce outside the Sherman Act's reach." *Empagran I*, 542 U.S. at 162. The

21  statute then brings foreign commerce back within the Sherman Act's reach only when: (1) the

22  conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce *and*

23  (2) the domestic effect is what "gives rise to" the plaintiff's antitrust claim under the Sherman Act.

24  15 U.S.C. §6a. *See Subspace Omega LLC v. Amazon Web Servs.*, 2024 WL 5202517, at *12 (W.D.

25  Wash. Dec. 23, 2024).

26

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 6

This case presents a straightforward application of the FTAIA requiring dismissal of all claims—for damages and for injunctive relief—for injuries allegedly incurred outside the United States. As explained below, the FTAIA bars 85 percent of Plaintiffs' claims, i.e., all claims for injuries allegedly suffered by players on the 51 (out of 60) CHL clubs located in Canada.

*First,* the Complaint alleges claims by foreign plaintiffs against foreign defendants for foreign conduct that caused alleged foreign injuries. As a matter of law, this is "activity involving foreign commerce" that falls "outside the Sherman Act's reach" under the FTAIA's general rule. *Empagran I*, 542 U.S. at 162. The fact that the Complaint also alleges some domestic conduct and injuries is immaterial to the FTAIA's bar over alleged foreign injuries to players in Canada. *Id*.

*Second*, the alleged anticompetitive conduct cannot qualify as "import commerce" to preclude application of the FTAIA. Plaintiffs' invocation of "import commerce" based on some CHL players coming into the U.S. to play hockey games defies common sense and the plain language of the Act, is unsupported by precedent, and ignores that the movement of CHL players with foreign injuries runs in the opposite direction.

*Third*, Plaintiffs cannot meet the FTAIA's "domestic effects" exception. Accepting the Complaint's allegations as true, there is no "domestic effect" of the alleged anticompetitive conduct that "gives rise to" any of Plaintiffs' *foreign* injury claims.

Applying the FTAIA to Plaintiffs' claims requires dismissal of 85 percent of Plaintiffs' claims—all claims for damages or injunctive relief by or on behalf of players on the 85 percent of CHL clubs (51 out of 60) based in Canada. For the named Plaintiffs, the FTAIA bars DiLaura's claims entirely, as he did not play on a U.S.-based CHL team during the purported class period. (Compl. ¶¶ 77–79). The FTAIA limits Gould's damages claims to the seasons in which he played for a U.S.-based CHL team (*id.* ¶ 74). (Gould also does not have standing to pursue injunctive relief.)

**STOEL RIVES** LLP
**ATTORNEYS**
**600 University Street, Suite 3600, Seattle, WA 98101**
*Telephone 206.624.0900*

### A. Plaintiffs allege foreign injuries involving foreign commerce.

There is no question that "foreign anticompetitive conduct plays a significant role" in Plaintiffs' allegations. *Empagran I*, 542 U.S. at 169. The CHL, its Member Leagues, and the vast majority of CHL clubs operate (and entered the alleged agreements) in Canada. There is also no question that Plaintiffs seek relief for foreign injuries: they define the putative class as "all players" who played for a CHL club (Compl. ¶ 306), and expressly include "Players in Clubs that operate in Canada" (*id.* ¶ 302). The Complaint alleges that as a result of the challenged agreements, the CHL clubs underpaid their players and restrained them from moving between teams. (*See, e.g.*, *id.* ¶¶ 184, 222, 228, 300, 303, 322–23, 334). For FTAIA purposes, these alleged injuries have one key element in common: they were all allegedly inflicted on each club's players at that team's location. Thus, for the players on 51 of the 60 CHL clubs, those injuries occurred in Canada. This is also true for any injury allegedly related to the NHL–CHL Agreement, which claims are also not actionable for the reasons set forth in the NHL's motion to dismiss, which the CHL Defendants join and incorporate by reference.

The FTAIA bar to Plaintiffs' Canadian injuries is not affected by the existence of nine CHL teams in the U.S., Plaintiffs' allegation of a "transnational cartel," (*id.* ¶ 5), or the fact that some players may have suffered domestic injuries. *Empagran* squarely forecloses any such argument. The Supreme Court applied the FTAIA to dismiss plaintiffs' foreign injury claims despite the existence of a transnational conspiracy that "significantly and adversely affects both customers outside the United States and customers within the United States." 542 U.S. at 164. As in *Empagran*, the FTAIA requires a discrete analysis of claims for injuries suffered while playing on Canadian teams, separate from any analysis of injuries to players on U.S.-based clubs.

Following *Empagran*, courts in this Circuit have confirmed that "Plaintiffs' damages claims implicating foreign commerce must be analyzed independently to determine their justiciability and, if necessary, a portion of the claims *may be dismissed from the lawsuit*." *In re Static Random Memory (SRAM) Antitrust Litig.*, 2010 WL 5477313, at *4 (N.D. Cal Dec. 31,

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 8

2010) (emphasis added). These courts have routinely carved out and dismissed foreign injury claims brought as part of a broader set of claims. *See id.* at \*8 (dismissing damages claims under the FTAIA based on transactions for products billed to the U.S. but shipped to a foreign country); *see also, e.g.*, *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 784 (N.D. Cal 2007) (evaluating the entirety of plaintiffs' allegations of injury as a single "claim" under the FTAIA is "inconsistent with jurisdictional principles and an attempt to elevate form over substance"); *In re Capacitors*, 2018 WL 4558265, at \*6 (price-fixed components sold abroad, incorporated abroad, and finished goods sold abroad had "no impact on a U.S. purchaser or consumer" even if the same components sold domestically did have such impacts).

It is also not relevant that the alleged foreign and domestic injuries flow from the same challenged conduct—the alleged agreements to allocate recruiting territories, hold drafts, impose standard player agreements, and limit player movement. *See, e.g.*, *In re Rubber Chems.*, 504 F. Supp. 2d at 786 (plaintiff's allegations that defendants agreed to raise prices globally was insufficient to preclude application of FTAIA to foreign injury claims); *In re Optical Disk Drive Antitrust Litig.*, 2017 WL 11513316, at \*6 (N.D. Cal. Dec. 18, 2017) (distinguishing "conduct" from "effects" and holding that while foreign and domestic purchases of products "may be subject to the same conduct by [d]efendants—collusion and price negotiation in the United States by U.S.-based employees"—the "effects" of the former "are foreign sales of [price-fixed components] to foreign [purchasers] for incorporation into computers that were sold to foreign consumers" which were barred by the FTAIA).

The Seventh Circuit's decision in *Motorola Mobility LLC v. AU Optronics Corp.* and this Court's decision in *Subspace* are instructive. 775 F.3d 816 (7th Cir. 2015); *Subspace*, 2024 WL 5202517. *Motorola* involved a Sherman Act claim for damages from an alleged global price-fixing agreement that covered both parts bought and delivered in the United States and parts bought and incorporated into products abroad. *See* 775 F.3d at 818. The Seventh Circuit held that the FTAIA barred injuries flowing from the purchases abroad, and excluded them from the damages claims.

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1    *Id.* By contrast, *Subspace* involved allegations about "domestic anticompetitive conduct by a U.S.

2    company directed at a U.S. firm operating in the U.S. market," and this Court held that those

3    allegations were sufficient to avoid application of the FTAIA to the allegedly domestic claims on

4    a motion to dismiss. 2024 WL 5202517, at *12.

5        Plaintiffs' claims parallel those in *Motorola*—players on U.S.-based teams and players on

6    Canadian teams each allegedly suffered injuries from a "transnational" antitrust conspiracy. The

7    FTAIA requires dismissal of claims based on injuries allegedly suffered in Canada. To the extent

8    that some players on U.S. clubs suffered injuries in the United States akin to the domestic injuries

9    alleged in *Subspace*, the CHL Defendants do not argue that the FTAIA requires dismissal.

10        To be clear, the Complaint leaves no room for doubt that the vast majority of CHL players

11    are on Canadian teams, meaning that they live in Canada, play on a team based in Canada, and are

12    allegedly undercompensated or otherwise injured in Canada. As a matter of law, those injuries,

13    and the damages that flow from them, are subject to dismissal without the need for further

14    factfinding. *See, e.g.*, *In re DRAM Antitrust Litig.*, 546 F.3d at 990 (affirming district court's Rule

15    12 dismissal on FTAIA grounds); *In re Rubber Chems.*, 504 F. Supp. 2d at 786; *In re Capacitors*,

16    2018 WL 4558265, at *6. This also means that Plaintiffs' class action claims conflict hopelessly

17    with the FTAIA, since the putative class would have predominately foreign, not domestic injuries.

18        The FTAIA similarly prohibits a U.S. court from applying the Sherman Act to enjoin

19    foreign conduct giving rise to foreign effects. *See, e.g.*, *In re DRAM Antitrust Litig.*, 546 F.3d at

20    991 (affirming dismissal on FTAIA grounds of claims for injunctive relief); *In re TFT-LCD (Flat

21    Panel) Antitrust Litig.*, 2008 WL 2219837, at *1 (N.D. Cal May 27, 2008) (denying motion to

22    enjoin proposed joint venture in Japan between foreign corporations on FTAIA grounds); *see also*

23    ECF 135, CHL Defs' Opp. Mot. PI at 22 (geographic scope of injunctive relief issued by U.S.

24    court is limited to the United States). That prohibition precludes Plaintiffs' request for injunctive

25    relief against CHL's foreign conduct with respect to foreign players. (Compl. ¶¶ 311, 336, 353).

26

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

**B. The CHL Defendants' conduct is not "import commerce."**

Plaintiffs cannot rescue their foreign claims by characterizing the CHL Defendants' alleged conduct as "import commerce" that falls outside the scope of the FTAIA's bar. (*See* Compl. ¶ 282 (alleging CHL Defendants "further directed their conduct at import markets, especially the labor market for Players' services")). Trying to characterize the "labor market" for developmental hockey playing services as "import commerce" has no basis in the statutory text or precedent. It also ignores that the players who allegedly suffer foreign injuries necessarily *left* the United States.

"The word 'import' refers to the movement of *goods* into the United States from a foreign country." *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 96 (2d Cir. 2019) (emphasis added). No court has extended "import commerce" to apply to the cross-border flow of labor, let alone of amateur athletes. That is not surprising, as the antitrust laws expressly state "the labor of a human being is *not* a commodity or article of commerce." 15 U.S.C. § 17 (emphasis added).

Moreover, there is no plausible allegation of "movement" *into* the United States with respect to the *foreign* injury claims of players on Canadian teams. To the contrary, any "movement" of players who suffered foreign injuries flows in an "export" direction (from the U.S. to Canada). Plaintiffs rely on the example of Gould who traveled from Canada to United States to play on the Tri-City Americans (Compl. ¶ 282), but the FTAIA does not bar Gould from seeking damages for the season-and-a-half that he played on a U.S.-based team. It does, however, bar Gould's claims for injuries allegedly suffered after returning to Canada to play on the Prince Albert Raiders in Saskatchewan. (*Id.* ¶ 71).

Finally, Plaintiffs' own flawed logic does not help them. If coming to the United States to play for a U.S.-based CHL team was "import commerce," then going to Canada to play for a Canadian team would be "export commerce." And a Canadian player playing for a Canadian team would be wholly foreign commerce. The FTAIA requires dismissal of any claims based on injuries in the latter two categories.

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 11

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

### C. Plaintiffs cannot rely on the domestic effects exception to the FTAIA

Plaintiffs also cannot invoke the "domestic effects" exception to bring their foreign claims back within the reach of the Sherman Act. The alleged domestic injuries flowing from the challenged conduct do not "give rise to" the alleged foreign claims.

Consistent with other courts of appeal, the Ninth Circuit has interpreted the "gives rise to" language in the FTAIA to require that the domestic effects *proximately* cause plaintiffs' foreign claims and injuries. *In re DRAM Antitrust Litig.*, 546 F.3d at 987 ("[W]e conclude that 'but for' causation cannot suffice for the FTAIA domestic injury exception to apply and therefore adopt a proximate causation standard."). Plaintiffs do not allege any such proximate cause. Instead, Plaintiffs affirmatively allege that the foreign effects (on players on Canadian-based teams) and domestic effects (on players on U.S.-based teams) are "felt simultaneously." Compl. ¶ 302. That is fatal to their foreign injury claims: when foreign and domestic effects are felt at the same time, one cannot be said to have caused the other.

To meet the FTAIA's domestic effects exception, plaintiffs needed to allege that the challenged conduct proximately caused lower U.S. player compensation and/or other domestic competitive injuries, and that those domestic effects in turn proximately caused injuries to players in Canada. *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014) (FTAIA "includes two distinct causation inquiries, one asking whether the defendants' foreign conduct caused a cognizable domestic effect, and the other asking whether that effect caused the plaintiff's injury"). Plaintiffs failed to do so. "[T]hat the conspiracy had effects in the United States and abroad does not show that the effect in the United States, rather than the overall [alleged CHL conspiracy] itself, proximately caused the effect abroad." *In re DRAM Antitrust Litig.*, 546 F.3d at 988; *see also In re Capacitors*, 2018 WL 4558265, at *6 (rejecting argument that agreements made in United States to set the global price for a component constituted "proximate caus[e]" of foreign plaintiffs' claimed injuries); *Motorola,* 775 F.3d at 819–20 (plaintiff did not allege proximate cause for claims based on the effect of the alleged price fixing on its foreign subsidiaries).

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 12

Similarly and as discussed above, Plaintiffs' allegations that the U.S.-based CHL clubs were part of the alleged conspiracy does not save their claims. It is the situs of the antitrust *injury*— not the situs of the alleged conduct—that matters for the FTAIA. *See Subspace,* 2024 WL 5202517, at *12 ("After all, the focus of the analysis is ultimately the location of the *effects*, not the location of the conduct."); *In re Intel Corp. Microprocessor Antitrust Litig.,* 452 F. Supp. 2d 555, 562 (D. Del. 2006) (rejecting argument that "foreign conduct with a direct foreign effect should be combined with domestic conduct in an attempt to confer jurisdiction over the foreign conduct under the rubric of a single claim"). Thus, even when plaintiffs allege global or "transnational" conspiracies with effects in the United States, courts have applied the FTAIA to carve out foreign injury claims caused by that overarching conspiracy. *See, e.g.*, *In re DRAM Antitrust Litig.,* 546 F.3d at 988–90 (affirming district court's dismissal of foreign injury claim where plaintiff failed to "provide any comprehensible theory alleging a direct causal link between the domestic effects and the foreign injury"); *Empagran S.A. v. F. Hoffmann-LaRoche,Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) (*Empagran II*) (plaintiffs alleging "global" conspiracy did not establish proximate causation for plaintiffs' foreign injuries when plaintiffs alleged that foreign effects of price-fixing "gave rise to" their injuries abroad).

Finally, the fact that some players, like Gould, allegedly suffered injury on both Canadian- and U.S.-based teams does not preclude the FTAIA's application to claims for injuries suffered in Canada. "Post-*Empagran*, courts vetting allegations of antitrust injury have not permitted the FTAIA to extend jurisdiction over foreign injury independent of domestic effects merely because the same plaintiff is also able to allege domestic injury caused by the same anticompetitive conduct." *In re Rubber Chems.*, 504 F. Supp. 2d at 784.

## II.    Principles of international comity favor dismissal.

As demonstrated above, the FTAIA requires dismissal of 85 percent of Plaintiffs' claims. The Court does not have to take up the remaining 15 percent. Principles of international comity instead counsel in favor of dismissal of those claims, which overlap with Canadian litigation.

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 13

As the Ninth Circuit has explained, in enacting the FTAIA, "Congress did not change the ability of the courts to exercise principles of international comity." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 813–14 n.8 (9th Cir. 1988). Both the FTAIA and principles of international comity are designed to address the fact that foreign application of U.S. law "creates a serious risk of interference with a foreign Nation's ability independently to regulate its own commercial affairs." *Empagran I*, 542 U.S. at 165.

The international comity concerns in this case are apparent because Plaintiffs' allegations rely on materials from a separate, *ongoing* Canadian litigation for a class of both Canadian and U.S. CHL players addressing the same claims regarding abuse that Plaintiffs make. (*See* Compl. ¶¶ 3, 158, 286 (citing Factum of the Moving Defendants, *Carcillo v. Canadian Hockey League*, CV-20-642705-00CP, Ontario Superior Court of Justice (Oct. 3, 2022)). Plaintiffs ask this Court to adjudicate injury claims and award damages based on foreign conduct that is already before the Canadian court system.

These comity concerns are further heightened when, as in this case, Plaintiffs seek to skirt the application of their own competition laws for a more favorable outcome under the U.S. antitrust laws. Having lost an antitrust challenge to the same foreign conduct—supported by the same WAIPU Plaintiffs—in Canada (the *Mohr* case), Plaintiffs should not be entitled to another bite at the apple in this Court. And that is without regard to the fact, as explained below, that this Court also lacks personal jurisdiction over 23 of the CHL Defendants.

## III. The Court should dismiss the QMJHL and Non-Corporation OHL Defendants.

On November 26, 2024, the Southern District of New York dismissed Plaintiffs' claims for lack of personal jurisdiction because there was no nexus between Plaintiffs' claims against any CHL Defendant and that jurisdiction. *See World Ass'n of Icehockey Players Unions N. Am. Div. v. NHL, et al.*, 2024 WL 4893266, at *15 (S.D.N.Y. Nov. 26, 2024). Having refiled their Complaint in Washington, Plaintiffs still cannot properly assert jurisdiction over the QMJHL and its clubs, none of which operates teams or otherwise transacts material business in the United States, let

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 14

1   alone in this state. Plaintiffs also cannot assert jurisdiction over the non-corporation OHL clubs

2   even under the Ninth Circuit's expansive interpretation of Section 12 of the Clayton Act.

3        The Ninth Circuit has "interpreted Section 12 of the Clayton Act (15 U.S.C. § 22) to grant

4   personal jurisdiction over any corporate antitrust defendant with minimum contacts with the

5   nation" sufficient to satisfy due process. *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1100

6   n.1 (9th Cir. 2024). That interpretation, which requires only minimum contacts with the United

7   States as a whole before *any* foreign corporation can be dragged into *any* federal court, conflicts

8   with the majority of circuits and with the plain text of the statute. *See, e.g.*, *KM Enters., Inc. v.*

9   *Glob. Traffic Techs., Inc.*, 725 F.3d 718, 728 (7th Cir. 2013) (collecting precedent). Although this

10  court is bound by that precedent, the Ninth Circuit (or the U.S. Supreme Court) should revisit it.

11       This case illustrates the problems with that minority view: CHL Defendants which have

12  not transacted any business or caused any injuries in either New York or Washington State are not

13  subject to jurisdiction in New York but are nevertheless forced to defend this action—even though

14  Plaintiffs Gould and DiLaura were not injured in this state and Plaintiffs have made no showing

15  that the out-of-state CHL Defendants purposefully availed themselves of the forum. *See World*

16  *Ass'n of Icehockey Players*, 2024 WL 4893266, at *7, *13; *see also Karsten Mfg. Corp. v. U.S.*

17  *Golf Ass'n*, 728 F. Supp. 1429, 1435-36 (D. Ariz. 1990) (unreasonable as matter of due process to

18  haul Scottish defendants into antitrust litigation in Arizona, giving "*significant*" weight" to "the

19  unique burdens placed upon defendants forced to defend in a foreign legal system") (citing *Asahi*

20  *Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987)).

21       Even under the Ninth's Circuit's current approach, four OHL clubs—the Erie Otters,

22  Saginaw Spirit, Ottawa 67s, and Sarnia Sting—should be dismissed under Rule 12(b)(2). Clayton

23  Act Section 22 does not apply to these clubs because they are not corporations. *See World Skating*

24  *Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005); ECF 128 (Rule 7.1

25  Corporate Disclosure Statement); *see also California Clippers, Inc. v. U.S. Soccer Football Ass'n*,

26  314 F. Supp. 1057, 1061 (N.D. Cal. 1970) (same holding under prior version of statute); NHL Mot.

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 15

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

at 11–12. Plaintiffs also have not alleged any (let alone sufficient) Washington-specific contacts for these clubs that could support jurisdiction under Washington State's long-arm statute. *See Greco v. Northwell Health, Inc.*, 2022 WL 533047, at *4 (E.D. Wash. Feb. 22, 2022) (dismissing foreign defendant that lacked Washington contacts).

As explained more fully below, the QMJHL and each of its clubs, which operate and play exclusively in Canada, also should be dismissed. Plaintiffs cannot show that those defendants have the requisite connections to the United States such that an exercise of personal jurisdiction would satisfy federal due process.

**A.    The QMJHL does not have "minimum contacts" with the United States**

The Ninth Circuit uses a three-part test to evaluate minimum contacts. *Picot*, 780 F.3d at 1211. As to the QMJHL Defendants, Plaintiffs cannot meet the first prong, which requires them to show that the defendant "purposefully directed" activities at or "purposefully availed" itself of the forum.

*Purposeful Direction*: To show that a defendant "purposefully directed" its actions at the forum, plaintiffs must allege that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered *in the forum state*." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) (emphasis added). But to the extent that Plaintiffs allege harm caused by the QMJHL or its member clubs, that harm is not "likely to be suffered in the [United States]." *Id.*

*First*, plaintiffs do not—and cannot—allege that any harms from alleged restraints imposed on CHL players by the QMJHL and its member clubs were suffered in the United States. The QMJHL and all of its clubs are located in Canada. (*See* p.3, *supra*). To the extent that a player cannot leave a QMJHL team that he decides to join, he remains in Canada on a team that plays in Canada. If he is undercompensated, it is through stipends (in Canadian dollars) that he receives in Canada to cover living expenses while he plays hockey in Canada. Because the QMJHL has no

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

clubs in the United States, plaintiffs fail to allege any harms "that the defendant knows [are] likely to be suffered in the forum" of the United States. *In re W. States*, 715 F.3d at 743; *Alcabes v. Capella Hotel Grp. LLC*, 2015 WL 12697714, at *4 (C.D. Cal. July 8, 2015) (defendant had not purposefully availed itself of California as a forum "because the injury occurred in Indonesia, [and so] the harm was not suffered in California").

*Second*, and for similar reasons, to the extent that any harm befell a player who was recruited from the United States to play in the QMJHL or its member clubs, that harm would also occur in Canada, not the United States. A U.S.-based recruit could not suffer harm from the QMJHL or any of its member clubs—in the form of restrained compensation, freedom of movement, or any other injury—unless he left the United States and agreed to join one of the QMJHL clubs. *Picot*, 780 F.3d at 1213–14. Plaintiffs allege that players in the QMJHL are subjected to standard agreements imposed by that Canadian league, and it is undisputed that QMJHL players sign contracts and perform all services in Canada. (*See* pp. 3–4, *supra*).

*Picot* confirms why the alleged actions of the QMJHL and its clubs do not support personal jurisdiction. 780 F.3d at 1209, 1213–14. The Ninth Circuit dismissed claims brought in California by a California resident against a former business partner based in Michigan. *Id*. at 1209. The business agreement (like the challenged SPAs) was formed in Michigan (not California) and so the work was performed largely but not exclusively in Michigan (not California), and the fact that one signatory to the business agreement happened to be a resident of California was not enough to establish personal jurisdiction. *Id.* at 1212. It did not matter that the defendant had twice traveled to California as part of his business dealings with the plaintiff, because those two trips had "no special place in [the defendant's] performance under the agreement as a whole." *Id.* at 1213).[1]

---

[1] A single QMJHL team visited the United States to play three games in the 2024 Memorial Cup tournament, which was held in Michigan. But participation in a single tournament—located in the United States for the first time in decades—is not the type of "substantial connection" that establishes personal jurisdiction. *Picot*, 780 F.3d at 1213.

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Purposeful Availment*: Plaintiffs also lack minimum contacts under the Ninth Circuit's "purposeful availment" test. A defendant does not establish minimum contacts with a forum when its only contacts involve scouting or recruiting a plaintiff to *leave* the forum and travel or work elsewhere. *See, e.g.*, *Sarkis v. Lajcak*, 425 Fed. App'x. 557, 559 (9th Cir. 2011) (no minimum contacts under the purposeful availment test because "the point of the contract" negotiated and executed in the forum "was to have [plaintiff] move to Bosnia to work for OHR" in Bosnia.). The Ninth Circuit has distinguished cases like this one—in which recruitment draws a plaintiff *away* from the forum—with others "involve[ing] a contract for the state resident to work in the state," thereby establishing a legitimate connection to the forum state and giving rise to personal jurisdiction. *Id.; see also Bailey v. DynCorp Int'l FZ-LLC*, 2012 WL 112867, at \*7 (D. Or. Jan. 11, 2012) (plaintiff recruited from Oregon to work in Afghanistan could not bring suit in Oregon); *Van Steenwyk v. Interamerican Mgmt. Consulting Corp.*, 834 F. Supp. 336, 342 (E.D. Wash. 1993) (when "the economic relationships created by the contract were to have found their fulfillment outside this state," minimum contacts were not established in Washington).

Even more directly applicable, the Washington Court of Appeals applied analogous due process principles to hold that Michigan State University did not "purposefully avail" itself of the Washington state forum by recruiting athletes in Washington to play in Michigan. *Burgess v. Michigan State Univ.*, 84 Wn. App. 1012 (1996). Michigan State representatives traveled to Washington to recruit the plaintiff. *Id.* at \*1. She accepted the offered scholarship and moved to Michigan to compete on the gymnastics team. *Id.* While competing there, she encountered abusive conditions and poor medical care for injuries. *Id.* When she brought suit against Michigan State in Washington, the Court held that MSU did not have sufficient contacts with the forum to be haled into Court, explaining: "The more compelling fact here is that performance by all parties was to take place solely in Michigan. . . . The contract does not contemplate any continuing obligations or relationships in this state." *Id.* at \*2.

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Burgess* is on all fours with this case. Any recruiting or scouting of U.S. players by the QMJHL was for play *outside* of the United States. Performance by all parties took place in Canada, and the agreement between the QMJHL club and the player did "not contemplate any continuing obligations or relationships in [the United States]." *Id*.

Judge Garnett's decision in the New York Action is also on point. Judge Garnett correctly held that the alleged recruiting activities—and alleged market allocation agreements—of the CHL clubs were insufficient to "constitute the carrying on of business of any substantial character under the Clayton Act." *WAIPU*, 2024 WL 4893266, at *17 (S.D.N.Y. Nov. 26, 2024). Just as the CHL Defendants had no business of any substantial character in New York, the QMJHL has no business of any substantial character in the United States.

**B.      The claims do not "arise from" the QMJHL's contacts with the U.S.**

Plaintiffs cannot manufacture jurisdiction through the QMJHL's alleged sales and licensing contacts with the United States and Washington. Those allegations are insufficient and also irrelevant.

*First*, Plaintiffs' conclusory and rote allegations that the QMJHL Defendants "licens[e] and sell[] … merchandise and products, including television events" in this District (*e.g.*, Compl. ¶¶ 129–46) are not sufficient. Rote pleading—when a plaintiff cuts-and-pastes the same generic allegation for dozens of separate defendants—cannot sustain jurisdictional claims. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.") (citing *Alperin v. Vatican Bank*, 410 F.3d 532, 539 n. 1 (9th Cir. 2005); *Smith v. NaphCare Inc.*, 2023 WL 2477892, at *10 (W.D. Wash. Mar. 13, 2023) (granting dismissal on jurisdictional grounds). In *Smith* for example, the court dismissed claims against seven out-of-state defendants for lack of personal jurisdiction when plaintiffs, who were suing over the alleged failure to protect a jail inmate undergoing a mental health crisis from self-harm, "appl[ied] the same conclusory language to each of the individual Defendants." *Smith*,

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 19

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

2023 WL 2477892, at *10. Plaintiffs' identical and conclusory allegations of sales and licensing activities by 19 QMJHL entities (Compl. ¶¶ 128–146) are equally infirm.

*Second*, these alleged activities (even if sufficiently pled) are not relevant to the personal jurisdiction analysis as they do not give rise to Plaintiffs' claims. *Picot*, 780 F.3d at 1211 (for personal jurisdiction to arise, the "claim must be one which arises out of or relates to the defendant's forum-related activities"). A claim "arises out of or relates to the defendant's forum related activities," *id.*, when the forum-related activities (1) *cause* the plaintiff's injuries; or (2) when there is "a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023). Plaintiffs' bare-bones allegations that the QMJHL Defendants sell, license, or advertise products or game broadcasts "in this district" or in the United States are far too attenuated from their alleged injuries to meet the "arising under or related to" requirement.

Online sales in the United States could, in theory, offer a basis for jurisdiction if the claim at issue were about the merchandise sold. *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) (trademark claim "ar[ose] out of" online sales of the infringing products in the forum). By contrast, advertising or sale of one product in a forum does not establish personal jurisdiction for unrelated claims or products. *See Yamashita*, 62 F.4th at 506–07 (claim did not "relate to" defendants' forum contacts from shipping large numbers of solar batteries into the state when plaintiff was injured by a different battery in an e-cigarette; "the large batteries installed in stationary solar-power systems and the small portable stand-alone battery at issue here are as different as sedans and 18-wheelers").

Just as in *Yamashita*, and unlike in *Herbal Brands*, Plaintiffs' labor-related antitrust claims are unmoored from any broadcast or product licensing, advertising, or sales in the United States because those sales do not relate to any element of their labor-antitrust claims. As Judge Garnett correctly held, "with respect to the CHL Defendants' marketing of merchandise, advertising, and streaming online to within the United States, … Plaintiffs have not articulated any 'substantial

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 20

relationship' or 'articulable nexus' between those transactions and Plaintiffs' claims of violations of antitrust law." *WAIPU*, 2024 WL 4893266, at *15 (citation omitted).

### C. Personal jurisdiction over the QMJHL would not be reasonable.

Even if the QMJHL's tenuous alleged connections to the United States were sufficient to establish "minimum contacts," an exercise of personal jurisdiction over the QMJHL or its member clubs would still violate the third prong of the personal jurisdiction test—whether an exercise of personal jurisdiction would be reasonable. *Picot*, 780 F.3d at 1211. It would violate the QMJHL Defendants' due process rights to force these Canadian entities into an American court regarding hockey operations that they carry out in Canada.

In assessing whether the exercise of jurisdiction is "reasonable," the Court considers several different factors, including: "(1) the extent of the defendants' purposeful injection into the forum[]'s affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

Plaintiffs have plausibly alleged no more than two indirect connections between the QMJHL and the United States: (1) that it is a member of the CHL, which includes other leagues with teams that play in four U.S. states; and (2) that it occasionally recruits players from the United States to play hockey in Canada. But the QMJHL Defendants are all Canadian-based entities—as are the CHL and the other two Member Leagues. And—as Plaintiffs' allegations confirm—the key events in this case all took place in Canada, including creating and signing the CHL constitution (Compl. ¶ 172), drafting and negotiating the standard player agreements, (*id.* ¶ 13), and holding the annual QMJHL draft (*id.* ¶ 187). Canada is indisputably a far more efficient forum with greater interest in resolving this case than the United States. *See, e.g.*, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993), *holding modified by Yahoo! Inc. v. La Ligue*

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (efficiency is based "primarily [on] where the witnesses and the evidence are likely to be located").

The burden on a defendant is "the primary concern in an assessment of reasonableness." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995), *holding modified on other grounds by Yahoo! Inc.*, 433 F.3d 1199. This factor "weighs heavily" against dragging the QMJHL and its member clubs into this Court. *Caruth*, 59 F.3d at 128; *see also Will Co. v. Lee*, 2023 WL 2837204, at *3 (W.D. Wash. Apr. 7, 2023) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.") (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 114 (1987)). The QMJHL and its clubs are located exclusively on the East Coast of Canada—several thousand miles from this Court—and the time and financial burdens of travel on the QMJHL and its member clubs are obvious. *See*, *e.g.*, *Cas. Assurance Risk Ins. Brokerage Co. v. Dillo*n, 976 F.2d 596, 600 (9th Cir. 1992) (requiring defendant to travel thousands of miles when his "contact with [the forum] has been limited to correspondence" with forum residence was unreasonable and violated due process). It would be unreasonable to haul defendants and witnesses thousands of miles away to litigate in a different country—and, for many, in a different language—based on conduct that occurred in Québec.

Finally, for the same reasons that the prior and ongoing related Canadian litigation supports application of international comity principles to dismiss this case, application of due process leads to the same result. A Canadian court has already dismissed an antitrust challenge against the CHL defendants in Canada, and it is hardly reasonable to think that "when a national of a foreign country follows the law of that country in that country it can be dragged halfway around the world to answer" for its actions in an American court. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1393 (9th Cir. 1995).

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

# CONCLUSION

Plaintiffs' foreign injury claims—85 percent of this case—should be dismissed under the FTAIA. The remainder of Plaintiffs' claims should be dismissed pursuant to principles of international comity, and each of the QMJHL, its member clubs, and the non-corporation OHL clubs should be dismissed from this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

*I certify that this memorandum contains 8,114 words, in compliance with the Local Civil Rules.*

February 13, 2025

STOEL RIVES LLP

*/s Vanessa Soriano Power*

Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com
Gabrielle K. Lindquist, WSBA No. 57177
gabrielle.lindquist@stoel.com
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206-386-7553

Derek Ludwin (*pro hac vice*)
dludwin@cov.com
Benjamin C. Block (*pro hac vice*)
bblock@cov.com
Lauren Willard Zehmer (*pro hac vice*)
lzehmer@cov.com
Jacqueline M. Fitch (*pro hac vice*)
jfitch@cov.com
Covington & Burling LLP
One City Center
850 Tenth St., NW
Washington, DC 20001-4956
Telephone: 202-662-6000

*Counsel for the CHL Defendants*

CHL Defs' Mot. to Dismiss
Case No. 24-cv-2135-TL - 23

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

# CERTIFICATION OF CONFERRAL

I hereby certify that on Tuesday, January 14, 2025, Tuesday, February 4, 2025, and Monday, February 11, 2025, I conferred with counsel for Plaintiffs by videoconference regarding the CHL Defendants' intention to file a motion to dismiss. In those conferences, we asked Plaintiffs to dismiss their action pursuant to Rules 12(b)(1) and 12(b)(6), and to dismiss the QMJHL and its member clubs and the non-corporation OHL Defendants pursuant to Rule 12(b)(2). Plaintiffs refused to do so, necessitating this motion.

February 13, 2025

STOEL RIVES LLP

/s Vanessa Soriano Power

Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com
Gabrielle K. Lindquist, WSBA No. 57177
gabrielle.lindquist@stoel.com
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206-386-7553

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900