1

The Honorable Tana Lin

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

10

WORLD ASSOCIATION OF ICEHOCKEY
PLAYERS UNIONS NORTH AMERICA
DIVISION ET AL.,

Case No. 2:24-cv-02135-TL

11

12

Plaintiffs,

**NATIONAL HOCKEY LEAGUE'S
MOTION TO DISMISS**

13

v.

14

NATIONAL HOCKEY LEAGUE ET AL.,

**NOTE ON MOTION CALENDAR:
MARCH 13, 2025**

15

Defendants.

**ORAL ARGUMENT REQUESTED**

16

17

18

19

20

21

22

23

24

25

26

27

NHL'S MOTION TO DISMISS
No. 2:24-cv-02135-TL

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    I.     The NHL ...................................................................................... 3

    II.    The NHL CBA ............................................................................. 4

    III.   The NHL-CHL Agreement ......................................................... 4

    IV.   The CHL Defendants' Alleged Antitrust Violations .................... 5

    V.    Procedural History ...................................................................... 6

LEGAL STANDARDS ............................................................................................ 7

ARGUMENT ........................................................................................................... 8

    I.     The Court Lacks Personal Jurisdiction over the NHL.................. 8

         A.    The NHL Is Not Subject to General Jurisdiction in Washington. .......... 9

         B.    The NHL Is Not Subject to Specific Jurisdiction in Washington. ....... 12

         C.    Plaintiffs Cannot Manufacture Personal Jurisdiction by Alleging a Conspiracy. ................... 15

    II.    Individual Plaintiffs Lack Article III Standing to Assert Their Claim Against the NHL................................................................. 16

    III.   Individual Plaintiffs Lack Antitrust Standing to Assert Their Claim Against the NHL................................................................. 17

    IV.   The Non-Statutory Labor Exemption Bars Individual Plaintiffs' Claim. ........ 19

    V.    The FTAIA and Principles of Comity Require Dismissal............................... 22

CONCLUSION ...................................................................................................... 22

NHL'S MOTION TO DISMISS - i
No. 2:24-cv-02135-TL

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldrich* v. *Nat'l Collegiate Athletic Ass'n*,
    484 F. Supp. 3d 779 (N.D. Cal. 2020)...................................................................9, 10, 11, 14

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    19 F.4th 127 (2d Cir. 2021) ...........................................................................................18

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) .........................................................................................................8

*Assoc. Gen. Contractors of Cal.* v. *Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ...................................................................................................18, 19

*Ballard* v. *Nat'l Football League Players Ass'n*,
    123 F. Supp. 3d 1161 (E.D. Mo. 2015) .............................................................................4

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) .........................................................................................................8

*Billing Assocs. Nw. LLC* v. *Addison Data Servs. LLC*,
    2025 WL 289171 (9th Cir. Jan. 24, 2025)...................................................................7, 10

*Boschetto* v. *Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ..........................................................................................7

*Bristol-Myers Squibb Co.* v. *Superior Ct.*,
    582 U.S. 255 (2017) .........................................................................................................9

*Brown* v. *Pro Football, Inc.*,
    518 U.S. 231 (1996) .......................................................................................................19

*Bubar* v. *Ampco Foods, Inc.*,
    752 F.2d 445 (9th Cir. 1985) ..........................................................................................18

*Cal. Clippers, Inc.* v. *U.S. Soccer Football Ass'n*,
    314 F. Supp. 1057 (N.D. Cal. 1970).................................................................................8

*Cascade Yarns, Inc.* v. *Knitting Fever, Inc.*,
    2011 WL 2470671 (W.D. Wash. June 17, 2011) ............................................................15

*Cattie* v. *Wal–Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................................17

NHL'S MOTION TO DISMISS - i
No. 2:24-cv-02135-TL

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*Chirila* v. *Conforte*,
    47 Fed. Appx. 838 (9th Cir. 2002) .......................................................................15

*City of Oakland* v. *Oakland Raiders*,
    20 F.4th 441 (9th Cir. 2021) ..........................................................................18, 19

*Clarett* v. *Nat'l Football League*,
    369 F.3d 124 (2d Cir. 2004) ..........................................................................20, 21

*Columbare* v. *Sw. Airlines, Co.*,
    2023 WL 406439 (N.D. Tex. 2023) ........................................................................4

*Core-Vent Corp.* v. *Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) .................................................................................15

*Daimler AG* v. *Bauman*,
    571 U.S. 117 (2014) .................................................................................9, 10, 11

*Dallas Texans Soccer Club* v. *Major League Soccer Players Union*,
    247 F. Supp. 3d 784 (E.D. Tex. 2017) ................................................................11

*Daniels-Hall* v. *Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ..................................................................................8

*Davis* v. *Billick*,
    2002 WL 1398560 (N.D. Tex. June 26, 2002) ....................................................11

*Doe 1* v. *Nat'l Collegiate Athletic Ass'n*,
    2023 WL 105096 (N.D. Cal. Jan. 4, 2023)................................................9, 12, 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ..................................................................................7

*Matter of E. Coast Foods, Inc.*,
    80 F.4th 901 (9th Cir. 2023) ...................................................................................7

*Eagle* v. *Star-Kist Foods, Inc.*,
    812 F.2d 538 (9th Cir. 1987) .................................................................................19

*Easter* v. *Am. West Fin.*,
    381 F.3d 948 (9th Cir. 2004) .................................................................................17

*Ferrie* v. *Woodford Rsch., LLC*,
    2020 WL 3971343 (W.D. Wash. July 14, 2020) ..................................................17

*G.O. Am. Shipping Co., Inc.* v. *China COSCO Shipping Corp. Ltd.*,
    2017 WL 6026959 (W.D. Wash. Dec. 5, 2017) ...................................................17

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ................................................................................. 15

*Harris* v. *Cty. of Orange*,
682 F.3d 1126 (9th Cir. 2012) ................................................................................. 22

*Hewitt* v. *Hewitt*,
896 P.2d 1312, 78 Wn. App. 447 (1995) ................................................................. 16

*Hill* v. *AMB Sport & Ent., LLC*,
2023 WL 2058066 (N.D. Ill. Feb. 16, 2023) .......................................................... 14

*Hogan* v. *Amazon.com, Inc.*,
2023 WL 3018866 (W.D. Wash. Apr. 20, 2023) ............................................... 17, 18

*Kneizys* v. *Fed. Deposit Ins. Corp.*,
2021 WL 2400751 (W.D. Wash. June 11, 2021) ................................................. 7, 10

*Learning Evolution, LLC* v. *CPG Catnet Inc.*,
2022 WL 484999 (S.D. Cal. Feb. 16, 2022) ...................................................... 12, 13

*Lenovo (United States) Inc.* v. *IPCom GmbH & Co., KG*,
2022 WL 2644096 (N.D. Cal. July 8, 2022) ........................................................... 13

*Lorenzo* v. *Qualcomm Inc.*,
603 F. Supp. 2d 1291 (S.D. Cal. 2009) ................................................................... 18

*Lucas* v. *Bechtel Corp.*,
800 F.2d 839 (9th Cir. 1986) ................................................................................... 19

*Ly Chhen* v. *Boeing Co.*,
2018 WL 4103665 (W.D. Wash. Aug. 29, 2018) ...................................................... 4

*Martinez* v. *Newsom*,
46 F.4th 965 (9th Cir. 2022) ................................................................................... 17

*McCourt* v. *Cal. Sports, Inc.*,
600 F.2d 1193 (6th Cir. 1979) ................................................................................. 21

*Mehr* v. *Féd'n Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015) .................................................................. 12

*Mirlis* v. *Greer*,
952 F.3d 51 (2d Cir. 2020) ....................................................................................... 4

*Nat'l Hockey League Players Ass'n* v. *Plymouth Whalers Hockey Club*,
419 F.3d 462 (6th Cir. 2005) .............................................................................. 20, 21

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*In re NHL Players' Concussion Injury Litig.*,
2019 WL 5079980 (D. Minn. Oct. 10, 2019) ............................................................9, 11, 14

*Nw. Wholesale Stationers, Inc.* v. *Pac. Stationery & Printing Co.*,
472 U.S. 284 (1985) ..................................................................................................................6

*In re Packaged Seafoods Prods. Antitrust Litig.*,
2020 WL 2747115 (S.D. Cal. May 26, 2020) ........................................................................13

*Payne* v. *Off. of Comm'r of Baseball*,
2016 WL 1394369 (N.D. Cal. Apr. 8, 2016) ..........................................................................11

*Pebble Beach Co.* v. *Caddy*,
453 F.3d 1151 (9th Cir. 2006) ...............................................................................................12

*Phoenix Elec. Co.* v. *Nat'l Elec. Contractors Ass'n*,
81 F.3d 858 (9th Cir. 1996) ....................................................................................20, 21, 22

*Pinkert* v. *Schwab Charitable Fund*,
48 F.4th 1051 (9th Cir. 2022) ..................................................................................................4

*Schwab Short-Term Bond Mkt. Fund* v. *Lloyds Banking Grp. PLC*,
22 F.4th 103 (2d Cir. 2021) ....................................................................................................19

*Schwarzenegger* v. *Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ...............................................................................9, 12, 13, 15

*Senne* v. *Kansas City Royals Baseball Corp.*,
105 F. Supp. 3d 981 (N.D. Cal. 2015) ...................................................................................11

*Silver Valley Partners, LLC* v. *De Motte*,
400 F. Supp. 2d 1262 (W.D. Wash. 2005) .............................................................................16

*Silverman* v. *Major League Baseball Player Relations Comm., Inc.*,
67 F.3d 1054 (2d Cir. 1995) ...................................................................................................21

*Smith* v. *NaphCare Inc.*,
2023 WL 2477892 (W.D. Wash. Mar. 13, 2023) ...................................................................10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .....................................................................................17

*Swartz* v. *KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..................................................................................................10

*Tikotzky* v. *Kai Data, LLC*,
2021 WL 3924757 (C.D. Cal. June 23, 2021) ........................................................................22

NHL'S MOTION TO DISMISS - iv
No. 2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*TransUnion LLC* v. *Ramirez*,
    594 U.S. 413 (2021) ...........................................................................16

*Univ. Ins., LLC* v. *Allstate Ins. Co.*,
    564 F. Supp. 3d 934 (W.D. Wash. 2021) ...............................................4

*Valve Corp.* v. *Zaiger, LLC*,
    2024 WL 3917194 (W.D. Wash. Aug. 20, 2024)....................................9

*Van Ornum* v. *Am. Med. Ass'n*,
    2017 WL 9481018 (D. Utah Mar. 14, 2017) ...........................................8

*WAIPU* v. *NHL*,
    2024 WL 4893266 (S.D.N.Y. Nov. 26, 2024) ..................................6, 14

*Walden* v. *Fiore*,
    571 U.S. 277 (2014) ....................................................................12, 13

*Wood* v. *Nat'l Basketball Ass'n*,
    809 F.2d 954 (2d Cir. 1987) ...............................................................21

*World Skating Fed'n* v. *Int'l Skating Union*,
    357 F. Supp. 2d 661 (S.D.N.Y. 2005) ....................................................8

*Yamashita* v. *LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ....................................................7, 13, 14

**Statutes**

15 U.S.C. § 1 ................................................................................6, 7, 17

15 U.S.C. § 6a...............................................................................3, 22

15 U.S.C. § 22 .....................................................................................8

Wash. Rev. Code § 4.28.185 ................................................................9

**Other Authorities**

Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and
    Their Application* (5th ed. 2025) ...........................................................8

Fed. R. Civ. P. 4(k)(1)(A)......................................................................9

Fed. R. Civ. P. 12(b)(1) ........................................................................7

Fed. R. Civ. P. 12(b)(2) .....................................................................7, 8

Fed. R. Civ. P. 12(b)(6) ........................................................................8

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Fed. R. Evid. 201(b)(2).................................................................................................................4

U.S. Const. art. III ...........................................................................................2, 7, 16, 17

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## **INTRODUCTION**

The National Hockey League ("NHL") is "the world's premier professional ice hockey league." Dkt. #1 ("Compl.") ¶ 268. Comprised of 32 member clubs, each team in the NHL carries a roster of exceptionally talented professional hockey players, hailing from all over the world. These players—and the coaches, managers, professional staff, officials, families, and communities who support them—work together to showcase hockey to fans worldwide. The NHL is also committed to expanding access and opportunity for people of all backgrounds and abilities to play hockey and to fostering the next generation of players through numerous developmental leagues across the world. On these and other important tasks, the NHL partners with the sole collective bargaining unit authorized to represent current and future NHL players, the NHL Players' Association ("NHLPA").

After voluntarily dismissing their case in the Southern District of New York, two former junior hockey players—Isaiah DiLaura and Tanner Gould ("Individual Plaintiffs")—have renewed their antitrust claim for damages against the NHL based on allegations about the junior hockey league in which they played as teenagers, Defendant Canadian Hockey League ("CHL"). As with their original case, the overwhelming majority of the Complaint has nothing to do with the NHL, which focuses on alleged anticompetitive agreements among the CHL and its constituent leagues. Nowhere do Individual Plaintiffs allege that the NHL agreed to, or influenced in any way, these allegedly anticompetitive agreements; nor could they. In their original case, Individual Plaintiffs sought to hold the NHL liable on the theory that the NHL "conditioned" annual player development funding provided for in the NHL-CHL Agreement on the CHL Defendants maintaining anticompetitive agreements among themselves. Ex. 8 ¶ 197.[1] They abandon that theory here, thus conceding that the NHL did not agree to any of the agreements made between CHL Defendants that Plaintiffs claim are anticompetitive.

Now, Plaintiffs limit their claim against the NHL solely to the allegation that it conspired with the CHL Defendants based on a single provision of the NHL-CHL Agreement that provides

---

[1] All exhibits cited herein are exhibits to the Declaration of William L. Daly.

NHL'S MOTION TO DISMISS - 1
No. 2:24-cv-02135-TL

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

for the reassignment of any CHL player to his CHL team if, after being drafted and signed by an NHL team, he is not assigned to the NHL roster. Their claim should be dismissed for the following reasons:

*First*, the Court lacks personal jurisdiction over the NHL. No applicable federal statute permits personal jurisdiction over the NHL. As an unincorporated association with its headquarters and principal place of business in New York, the NHL is not "at home" in Washington for purposes of general jurisdiction. Specific jurisdiction is absent because the NHL did not purposefully direct any tortious conduct at Washington, and Plaintiffs' claim is entirely unrelated to the NHL's limited alleged Washington contacts. Plaintiffs fall far short of establishing that exercising personal jurisdiction would be consistent with due process.

*Second*, Individual Plaintiffs lack Article III standing to assert their claim against the NHL because their alleged injuries—all suffered while playing in the CHL—are not traceable to the NHL's conduct. The challenged provision in the NHL-CHL Agreement only impacts players who were drafted and signed by NHL clubs and then reassigned to their CHL teams. But neither Individual Plaintiff was even drafted into the NHL and thus suffered no alleged injuries traceable to this provision.

*Third*, and for similar reasons, Individual Plaintiffs lack antitrust standing, a statutory standing requirement separate from Article III standing. Individual Plaintiffs do not—and cannot—allege that the provision upon which they base their claim caused either of them antitrust injury, and even if they had, that alleged injury would be too indirect or remote from the challenged conduct to confer antitrust standing.

*Fourth*, Individual Plaintiffs' claim against the NHL is barred by the non-statutory labor exemption to the antitrust laws, which immunizes allegedly anticompetitive effects of mandatory subjects of collective bargaining adopted or approved through the collective bargaining process. Here, the specific provision of the NHL-CHL Agreement that Plaintiffs challenge is also part of the collective bargaining agreement between the NHL and NHLPA, and it primarily affects only those inside the NHLPA bargaining unit—the present and future players in the NHL. Moreover,

NHL'S MOTION TO DISMISS - 2
No. 2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

the NHL-CHL Agreement has been approved by the NHLPA and incorporated into the collective bargaining agreement.

*Fifth*, Plaintiffs' claim against the NHL is barred by the Foreign Trade Antitrust Improvements Act ("FTAIA") because their alleged injuries were suffered almost entirely in Canada, and principles of international comity favor dismissing their claim as to any injury purportedly suffered in the United States.

## BACKGROUND

## I.    The NHL

The NHL is an "unincorporated joint venture association" with its headquarters and principal place of business in New York.  Compl. ¶ 82; Declaration of William Daly ("Daly Decl.") ¶ 2.[2]  It is "the world's premier professional ice hockey league," and it "represents the global pinnacle of the sport."  Compl. ¶¶ 268, 297.  The NHL is comprised of 32 member clubs operating in the United States and Canada, whose games are broadcast to more than 160 countries and territories around the world.  *Id.* ¶ 82; Daly Decl. ¶ 3.  The NHL seeks to aid the development of future generations of hockey players.  *Id.* ¶ 7.  NHL member clubs have "affiliated minor league clubs" in the American Hockey League ("AHL") and East Coast Hockey League ("ECHL"), which are developmental hockey leagues in the United States and Canada in which players aged 18 and older compete professionally.  Compl. ¶¶ 37, 268, 291.

NHL member clubs select new players through the annual NHL draft, which, since 2020, has been held in New Jersey (2020, 2021); Québec (2022); Tennessee (2023); and Nevada (2024).  Daly Decl. ¶ 4.  The NHL draft has never been held in Washington State.  *Id.*  To participate in the NHL draft, a player must be at least 18 years old.  Compl. ¶ 270.  NHL clubs draft more players than are needed to maintain their rosters, and so players who are drafted and signed by an NHL club who do not make its roster can be assigned to that NHL club's affiliated

---

[2] With respect to quoted material, unless otherwise indicated, all brackets, internal quotations, internal ellipses, and internal citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

team in the AHL or ECHL, or, in the case of 18- and 19-year-old former CHL players, to their former CHL team. *Id.* ¶ 271.

## II.    The NHL CBA

The NHL has a collective bargaining agreement with the NHLPA (the "CBA"), which is the bargaining representative of "all present and future Players employed as such in the League by the Clubs." Daly Decl. ¶ 13, Ex. 4 at 10.[3]  Plaintiffs have acknowledged the role of collective bargaining, alleging that "drafts are currently used in several other professional sports leagues"— including in the NHL—to "source and allocate players among their respective teams" and that "those drafts have been the subject of collective bargaining with duly certified player associations that represented and protected the players' interests." Compl. ¶ 192; *see also* Ex. 8 ¶ 130 (alleging that "collective bargaining" governed the NHL draft).[4]  And while Plaintiffs allege that CHL players are not represented by a labor union "in their relations with Major Junior Defendants," Compl. ¶ 50, they make no such allegation as to the NHL, nor could they.

## III.    The NHL-CHL Agreement

Plaintiffs' claim against the NHL is based on a single provision of the NHL-CHL Agreement. Compl. ¶ 269.[5]  This provision provides that a player who is drafted and signs an NHL contract but is "not retained by his NHL Club" must "be assigned to the Junior Club of the

---

[3] The NHL and NHLPA have extended the CBA until 2026 through a Memorandum of Understanding ("MOU"). Ex. 7. The MOU is publicly available on the NHL's website (https://www.nhl.com/info/frequently-asked-questions) (last visited Feb. 12, 2025)) and thus may be judicially noticed. *See infra* n.4.

[4] Courts take judicial notice of collective bargaining agreements in resolving motions to dismiss. *E.g.*, *Ly Chhen* v. *Boeing Co.*, 2018 WL 4103665, at *1 (W.D. Wash. Aug. 29, 2018) (taking judicial notice of collective bargaining agreement on motion to dismiss); *Ballard* v. *Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1166 (E.D. Mo. 2015) (taking judicial notice of collective bargaining agreement on motion to dismiss ).

Furthermore, the CBA is linked on the NHL's website, https://www.nhl.com/info/frequently-asked-questions (last visited Feb. 12, 2025), "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Pinkert* v. *Schwab Charitable Fund*, 48 F.4th 1051, 1055 n.2 (9th Cir. 2022) (district court took judicial notice of policies posted to party's website); *Mirlis* v. *Greer*, 952 F.3d 51, 63 n.11 (2d Cir. 2020) (taking judicial notice of blog posts); *Columbare* v. *Sw. Airlines, Co*., 2023 WL 406439, at *4 (N.D. Tex. 2023) (taking judicial notice of contract on website).

[5] Plaintiffs incorporate by reference the NHL-CHL Agreement, Compl. ¶¶ 35, 36, 269, 319, 321, so the Court can consider it in resolving this motion. *Univ. Ins., LLC* v. *Allstate Ins. Co*., 564 F. Supp. 3d 934, 938 (W.D. Wash. 2021). Two versions of the NHL-CHL Agreement were operative during the proposed Class Period, linked by a one-year extension in 2021. *See* Ex. 2 (2013 NHL-CHL Agreement); Ex. 3 (2021 Extension); and Ex. 1 (2022 NHL-CHL Agreement).

NHL'S MOTION TO DISMISS - 4
No. 2:24-cv-02135-TL

CHL for whom he last played or with whom he owes contractual obligations." Ex. 1 at 5–6.[6] The CBA contains a similar term, which provides that if an NHL club drafts a player aged 18 or 19 but does not retain him, the club "must first offer him to the club from which he was claimed," including CHL clubs. Ex. 4 Art. 8.7(a), at 21. Article 9.1(d)(iv) of the CBA notes that this "prohibition on sending underage players to minors," i.e., to NHL clubs' AHL or ECHL affiliates, is "confirmed and affirmed" by the CBA. *Id.* at 24.

The CBA includes letter agreements between the NHL and NHLPA incorporating the NHL-CHL Agreement into the CBA. *See id.* at 497. In a July 2005 letter agreement, the NHL and NHLPA set forth their agreement on the "CHL Agreement" as "a supplement to the" CBA, into which the former was "incorporated therein." Ex. 6. In a February 2013 letter agreement, the NHL and NHLPA agreed that the 2005 letter agreement—and thus, the NHL-CHL Agreement—was again "incorporated into and deemed to be part of the CBA." Ex. 4 at 497. And in August 2022, the NHLPA approved the currently effective NHL-CHL Agreement. Daly Decl. ¶¶ 13–14; Ex. 5.[7]

## IV.    The CHL Defendants' Alleged Antitrust Violations

The other Defendants in this case are wholly separate from the NHL. Defendant CHL is a Canadian organization that oversees and issues rules pertaining to the operation of its constituent member leagues (and those leagues' teams), all of which are Defendants: (1) the Ontario Hockey League, (2) the Québec Maritimes Junior Hockey League, and (3) the Western Hockey League (collectively, "CHL Defendants"). Compl. ¶¶ 3, 83, 84, 107, 128, 153. Plaintiffs allege that the CHL Defendants violated the Sherman Act by allocating geographic markets, operating an involuntary draft system, agreeing not to compete for players, entering into a wage-fixing agreement, and entering into an agreement to force players to surrender their rights to their names, images, and likeness. *Id.* ¶¶ 166–231, 317–18. Plaintiffs do not allege that the NHL agreed to, or influenced in any way, these allegedly anticompetitive agreements.

---

[6] Redactions to Exhibit 1 are of information not germane to the Motion and at the request of CHL Defendants.

[7] Pursuant to the Protective Order, the NHL may "use and cite materials produced and designated" in the S.D.N.Y. action (such as this email) "within papers related to . . . any Defendant's motion to dismiss." ECF No. 55 at 9.

NHL'S MOTION TO DISMISS - 5
No. 2:24-cv-02135-TL

## V.    Procedural History

Plaintiffs originally filed this lawsuit in the United States District Court for the Southern District of New York on February 14, 2024.  *See* Ex. 8.  In the S.D.N.Y. Complaint, Individual Plaintiffs attempted to state a *per se* Section 1 claim against the NHL based on the allegation that under the NHL-CHL Agreement, the NHL "expressly conditioned" annual funding to the CHL for player development on the CHL Defendants "maintaining the rules and practices that comprise the anticompetitive agreements" that remain the subject of this lawsuit.  *Id.* ¶ 197.

The NHL moved to dismiss that complaint arguing, among other things, that the NHL-CHL Agreement did not operate as Plaintiffs alleged and that Plaintiffs' claims were barred by the non-statutory labor exemption.  After Judge Margaret M. Garnett dismissed claims against the CHL Defendants for lack of personal jurisdiction, *WAIPU* v. *NHL*, 2024 WL 4893266 (S.D.N.Y. Nov. 26, 2024), but before the hearing scheduled to address the NHL's pending motion to dismiss, Plaintiffs voluntarily dismissed their claim against the NHL.

On December 23, 2024, Plaintiffs filed the Complaint in this action.  In their new Complaint, Plaintiffs dropped their central allegation that the NHL conditions its player development funding on the CHL Defendants maintaining anticompetitive agreements, thus conceding that the NHL did not agree to any of the CHL Defendants' allegedly anticompetitive agreements still challenged here.  Plaintiffs also dropped their *per se* Section 1 claim against the NHL, thus conceding that the NHL-CHL Agreement is not in the narrow category of agreements that are held *per se* unlawful and have no "redeeming virtue."  *Nw. Wholesale Stationers, Inc.* v. *Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985); *see* Compl. ¶ 329.[8]  Plaintiffs also amended their Complaint to remove any references to the CBA.  *Compare* Ex. 8 ¶ 130 *with* Compl. ¶ 192.

---

[8] Should Plaintiffs claim otherwise, the NHL reserves all rights to argue on reply that the *per se* rule does not apply, as the rule at issue is not among the categories of agreements courts have held to have "no redeeming virtue" or that have been condemned after decades of experience, and even based on Plaintiffs' allegations, "was intended to enhance overall efficiency and make markets more competitive."  *Nw. Wholesale*, 472 U.S. at 294; Compl. ¶ 159 (alleging CHL Defendants "are the primary pathway for prospects to reach" the NHL).  If the Court does not dismiss the NHL as it should, the NHL intends to vigorously challenge Plaintiffs' claim, including Plaintiffs' alleged relevant antitrust markets.  *Id.* ¶¶ 284–97.

Plaintiffs Tanner Gould and Isaiah DiLaura are former CHL players. Gould and DiLaura played for CHL teams in Canada; only Gould played, briefly, in the United States during the Class Period. Compl. ¶¶ 71–79, 306. Neither was drafted or signed by an NHL club. On behalf of themselves and a putative class of other CHL players, they bring a Sherman Act Section 1 damages claim against the NHL. *Id.* ¶¶ 319–36. The other Plaintiffs are the World Association of Icehockey Players Unions North America Division and the World Association of Icehockey Players Unions USA Corporation. These entity Plaintiffs bring claims against CHL Defendants only, not the NHL. *Id.* ¶¶ 337–53.

## LEGAL STANDARDS

**Rule 12(b)(2):** On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto* v. *Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). The court may consider a defendant's affidavits in resolving such a motion, and where, as here, the defendant submits a "contradictory affidavit, the plaintiff cannot simply rest on the bare allegations of its complaint." *Yamashita* v. *LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023). "Jurisdiction over each defendant must be established individually." *Billing Assocs. Nw. LLC* v. *Addison Data Servs. LLC*, 2025 WL 289171, at *1 (9th Cir. Jan. 24, 2025); *Kneizys* v. *Fed. Deposit Ins. Corp.*, 2021 WL 2400751, at *2 (W.D. Wash. June 11, 2021) ("each defendant's contacts with the forum State must be assessed individually").

**Rule 12(b)(1):** On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears "the burden of establishing subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) includes where the plaintiff lacks Article III standing. *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023). Dismissal "is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re DRAM*, 546 F.3d at 984–85.

**Rule 12(b)(6):** Dismissal is required when the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570

NHL'S MOTION TO DISMISS - 7
No. 2:24-cv-02135-TL

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

(2007). Allegations that amount to "mere conclusory statements" do not suffice. *Ashcroft* v.

*Iqbal*, 556 U.S. 662, 678 (2009). Nor are courts to accept as true allegations that are

"unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall* v. *Nat'l Educ. Ass'n*,

629 F.3d 992, 998 (9th Cir. 2010).

## **ARGUMENT**

## I.  **The Court Lacks Personal Jurisdiction over the NHL.**

Plaintiffs' claims should be dismissed under Rule 12(b)(2) because this Court lacks

personal jurisdiction over the NHL.

As an initial matter, Plaintiffs do not seek to establish personal jurisdiction under

Section 12 of the Clayton Act, 15 U.S.C. § 22.[9] Compl. ¶¶ 150–52. Nor could they, as

Section 12 applies only to antitrust suits "against a corporation," 15 U.S.C. § 22, which the NHL

is not. Compl. ¶ 82; Daly Decl. ¶ 2; *see also Van Ornum* v. *Am. Med. Ass'n*, 2017 WL 9481018,

at *10 (D. Utah Mar. 14, 2017) ("15 U.S.C. § 22 only applies to corporations"), *adopted*, 2017

WL 4339653 (D. Utah Sept. 29, 2017); *World Skating Fed'n* v. *Int'l Skating Union*, 357 F. Supp.

2d 661, 664–65 (S.D.N.Y. 2005) (rejecting application of Section 12 to sports body organized as

unincorporated association because "it is clear that [Section 12] is directed only to

corporations"); *Cal. Clippers, Inc.* v. *U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1061 (N.D.

Cal. 1970) (Section 12 "is inapplicable by its own terms" to suits against associations); Areeda

& Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 271

(5th ed. 2025) (Section 12 "applies only to corporations," so "an unincorporated defendant must

often be reached on the basis of minimum sufficient contacts with the forum state").

Thus, where, as here, "there is no applicable federal statute governing personal

jurisdiction, the district court applies the law of the state in which the district court sits."

*Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see* Fed. R. Civ.

---

[9] Section 12 provides that any "suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

P. 4(k)(1)(A).  Washington's long-arm statute, Rev. Code § 4.28.185, permits the exercise of jurisdiction to the extent consistent with due process, *Valve Corp.* v. *Zaiger, LLC*, 2024 WL 3917194, at *2 (W.D. Wash. Aug. 20, 2024), which requires a defendant to have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Daimler AG* v. *Bauman*, 571 U.S. 117, 126 (2014).  There are two types of personal jurisdiction—general or specific—neither of which is present here.  *Bristol-Myers Squibb Co.* v. *Superior Ct.*, 582 U.S. 255, 262 (2017).

### A.    The NHL Is Not Subject to General Jurisdiction in Washington.

A court may exercise "general" jurisdiction and hear "any claim" against a defendant only if the defendant may be "fairly regarded as at home" in the forum.  *Daimler*, 571 U.S. at 137.  The "paradigm" bases for general jurisdiction are a defendant's domicile, place of incorporation, or principal place of business, as those "affiliations have the virtue of being unique . . . as well as easily ascertainable."  *Id.*  For an unincorporated association like the NHL, courts look to the location of the association's headquarters or its principal place of business to determine where it is "at home," and therefore subject to general jurisdiction.  *See Doe 1* v. *Nat'l Collegiate Athletic Ass'n*, 2023 WL 105096, at *9 (N.D. Cal. Jan. 4, 2023) (finding no "general jurisdiction" in California because NCAA "has its principal place of business in Indianapolis, Indiana"); *Aldrich* v. *Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 787, 792–93 (N.D. Cal. 2020) (similar); *In re NHL Players' Concussion Injury Litig.*, 2019 WL 5079980, at *4 (D. Minn. Oct. 10, 2019) (finding no general jurisdiction over NHL in Minnesota, despite NHL club in Minnesota, because NHL's "principal place of business [is] in New York").  The NHL's headquarters and principal place of business is in New York.  Compl. ¶ 82; Daly Decl. ¶ 2.  Therefore, the NHL is not "at home" in Washington.

Apart from these paradigm affiliations, a court may exercise general jurisdiction only in an "exceptional case"—that is, where the defendant's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State."  *Daimler*, 571

U.S. at 139 & n.19.  It is not enough that the defendant's "in-forum contacts" are "continuous and systematic."  *Id*. at 139.

This is not an "exceptional case" permitting this Court to exercise general jurisdiction over the NHL.  The NHL does not own or lease any real property, have any offices, or maintain any bank accounts in Washington.  Daly Decl. ¶ 6.  It is not registered to do business in Washington, and it does not maintain any agent for service of process in Washington.  *Id.* Further, Plaintiffs plead no facts remotely suggesting that the NHL is "essentially at home" in Washington.  *Daimler*, 571 U.S. at 139.  Their allegations that "Defendants" "transact business" and have "substantial contacts" with Washington, Compl. ¶ 152, are entirely conclusory.  *See Swartz* v. *KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("conclusory allegations" that defendants "conducted business" in forum held "insufficient" to establish personal jurisdiction); *Smith* v. *NaphCare Inc.*, 2023 WL 2477892, at *10 (W.D. Wash. Mar. 13, 2023) (dismissing for lack of personal jurisdiction where plaintiffs relied on "conclusory language").  This allegation also impermissibly lumps all Defendants together, and so must be disregarded for failing to establish "each defendant's contacts with the forum State" individually.  *Kneizys*, 2021 WL 2400751, at *2; *Billing*, 2025 WL 289171, at *1.

Further, even if Plaintiffs' allegation that "Defendants participate in athletic contests and/or engage in licensing and selling merchandise and products, including television events," in Washington, Compl. ¶ 152, were specific to the NHL (it is not), it would be insufficient to establish general jurisdiction.  Following *Daimler*, "general jurisdiction no longer can be supported by mere business contacts.  Instead, there must be some type of ***unique*** contact with a forum."  *Aldrich*, 484 F. Supp. 3d at 791.  Plaintiffs do not allege any such unique contacts here. *Id.* at 794 (no general jurisdiction despite NCAA organizing games in forum; plaintiffs failed "to show why this tournament, as compared to the many others held across the United States, makes NCAA's contact with the forum distinct"); *Payne* v. *Off. of Comm'r of Baseball*, 2016 WL 1394369, at *5 (N.D. Cal. Apr. 8, 2016) (no general jurisdiction over non-resident baseball clubs in California despite games played in California); *Senne* v. *Kansas City Royals Baseball Corp.*,

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

105 F. Supp. 3d 981, 1018 (N.D. Cal. 2015) (no general jurisdiction over baseball clubs that traveled, scouted, earned revenue, and had employees in California); *Davis* v. *Billick*, 2002 WL 1398560, at *6 (N.D. Tex. June 26, 2002) (no general jurisdiction over team despite employees' travel to Texas and merchandise sales in Texas).

Any attempt by Plaintiffs to contend that the Seattle Kraken's presence in Washington is a sufficient basis to exercise general jurisdiction over the NHL because the Kraken are a member of the NHL would fail. The court in *National Hockey League Players' Concussion Injury Litigation* rejected this argument, holding that the NHL was not subject to general jurisdiction in Minnesota even though it "has a franchised club and team in Minnesota." 2019 WL 5079980, at *4. The court reasoned that the NHL also has "clubs and teams in several other states," and "taking into account the NHL's activities nationwide," its contacts with Minnesota were insufficient to satisfy *Daimler*'s exacting standard. *Id.* So too here. Although the NHL has a member club in Washington, it also has member clubs in 17 other states and five Canadian provinces. Daly Decl. ¶¶ 3, 5. Exercising general jurisdiction based on the Kraken's presence and Plaintiffs' paltry allegations would subject the NHL to jurisdiction in "every State" based on Plaintiffs' allegations that the NHL engages in nation-wide activities, which is like the "unacceptably grasping" theory of jurisdiction that *Daimler* rejected. 571 U.S. at 138; *see also Aldrich*, 484 F. Supp. 3d at 791 ("If general jurisdiction in one forum would subject the defendant to jurisdiction in many other forums, the exercise of such jurisdiction is likely improper.").

Additionally, courts uniformly hold post-*Daimler* that the state-affiliations of a member in an unincorporated association are insufficient to establish general jurisdiction over the association itself. *See, e.g.*, *Aldrich*, 484 F. Supp. 3d at 793–94; *Dallas Texans Soccer Club* v. *Major League Soccer Players Union*, 247 F. Supp. 3d 784, 789 (E.D. Tex. 2017) (considering forum contacts of players' union, but not of its members, in finding no personal jurisdiction); *Mehr* v. *Féd'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1048 (N.D. Cal. 2015) (similar); *Doe 1*, 2023 WL 105096, at *9 (similar).

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

**B.      The NHL Is Not Subject to Specific Jurisdiction in Washington.**

Plaintiffs also cannot establish specific jurisdiction over the NHL.  For a court to exercise specific jurisdiction, (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof," (2) the claim "must be one which arises out of or relates to the defendant's forum-related activities," and (3) exercising jurisdiction "must comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.[10]  Plaintiffs must satisfy the first two prongs before the burden shifts to the NHL to demonstrate that exercising personal jurisdiction would be unreasonable.  *Id.*  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co.* v. *Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  Plaintiffs fail to meet their burden.

1.      Plaintiffs Have Not Alleged that the NHL Purposefully Directed Conduct at Washington.

Purposeful direction requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803.  In other words, the plaintiff must show that the "defendant's actions connect him to the forum." *Walden* v. *Fiore*, 571 U.S. 277, 289–90 (2014).

Plaintiffs make a single conclusory allegation in an attempt to satisfy this element, alleging that the "Defendants . . . engaged in an illegal anticompetitive scheme that was directed at, and had the intended effect of causing injury to, persons residing in, located in, and/or doing business in the United States, including in Washington State and this District."  Compl. ¶ 152.  This conclusory allegation lumping together all Defendants does not demonstrate that the NHL "expressly aimed" any tortious conduct at Washington; all it shows is that the NHL allegedly

---

[10] The "purposeful direction" test applies to suits sounding in tort, including antitrust claims.  *Schwarzenegger*, 374 F.3d at 802; *Learning Evolution, LLC* v. *CPG Catnet Inc.*, 2022 WL 484999, at *3 (S.D. Cal. Feb. 16, 2022) (the "purposeful direction test applies to antitrust actions").  Plaintiffs' bare-bones, conclusory allegations also fail satisfy the "purposeful availment" test because they do not provide "evidence of the [NHL]'s actions in the forum." *Schwarzenegger*, 374 F.3d at 802.

NHL'S MOTION TO DISMISS - 12
No. 2:24-cv-02135-TL

engaged in an alleged antitrust conspiracy in the United States and Canada, a theory of personal jurisdiction courts routinely reject. *See In re Packaged Seafoods Prods. Antitrust Litig.*, 2020 WL 2747115, at \*5 (S.D. Cal. May 26, 2020) (no "express aiming" at forum because "effects from the nation-wide price fixing conspiracy alleged here create no connection to any particular forum"); *Learning Evolution*, 2022 WL 484999, at \*4 (no "express aiming" where alleged anticompetitive conduct was aimed at the plaintiff, "not the forum state").

Nor can—or do—Plaintiffs allege the NHL committed tortious conduct that it knew would cause harm "in the forum state." *Schwarzenegger*, 374 F.3d at 803. To the extent Plaintiffs may rely on alleged harm suffered by Gould in Washington, that is insufficient because it "improperly attributes a plaintiff's forum connections to the defendant." *Walden*, 571 U.S. at 289; *see also Schwarzenegger*, 374 F.3d at 807 (although defendant "committed intentional acts that may have caused harm to [plaintiff] in California," plaintiff failed to show that defendant "expressly aimed its acts at California"); *Lenovo (United States) Inc.* v. *IPCom GmbH & Co., KG*, 2022 WL 2644096, at \*12 (N.D. Cal. July 8, 2022) ("mere possibility" that allegedly anticompetitive conduct "could have some effect in the forum state" does not show "express aiming").

### 2.    Plaintiffs' Claim Does Not "Arise From" or "Relate To" the NHL's Contacts with the Forum.

To satisfy the second prong, a plaintiff must allege either "but for causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action" or "a close connection between contacts and injury." *Yamashita*, 62 F.4th at 505–06. Plaintiffs cannot meet either showing.

Plaintiffs' claim is predicated upon the NHL's alleged participation, through the NHL-CHL Agreement, in the CHL Defendants' purported conspiracy. Compl. ¶ 269. However, the NHL did not take any actions in Washington related to the NHL-CHL Agreement; therefore, Plaintiffs' claim does not arise from or relate to the NHL's alleged forum contacts. Specifically, the NHL-CHL Agreement was negotiated primarily from the NHL's New York headquarters and

in Canada—not Washington. Daly Decl. ¶ 10. No one from the NHL traveled to or communicated with anyone in Washington as part of the negotiation and execution of the NHL-CHL Agreement. *Id.* ¶¶ 10–11. The NHL carried out the NHL-CHL Agreement from New York and Canada. *Id.* ¶ 12. Correspondence concerning the NHLPA's approval of the most recent NHL-CHL Agreement took place between the NHL in New York and the NHLPA's Toronto-based General Counsel. *Id.* ¶¶ 13–14. Plaintiffs likewise do not allege that any CHL Defendants negotiated or signed the NHL-CHL Agreement in Washington. Further, to the extent Plaintiffs contend their claim arises from or relates to the NHL Draft, that draft has never been held in Washington. *Id.* ¶ 4.

Plaintiffs' generalized allegations that "Defendants" hold events and license or sell merchandise in Washington is unrelated to their claim and purported injury. Compl. ¶ 152. Plaintiffs thus do not and cannot allege a single fact to show a sufficiently "close connection," let alone a "direct nexus," between the NHL's alleged forum contacts and their claim. *Yamashita*, 62 F.4th at 504; *see also Aldrich*, 484 F. Supp. 3d at 796 (claims did not arise from forum contacts where plaintiffs "would have suffered the same injuries" absent contacts); *Doe 1*, 2023 WL 105096, at *10 (where NCAA allegedly failed to protect athletes from abusive coaches, no personal jurisdiction because claim did not arise from NCAA's forum contacts, but rather its rulemaking activities in Indiana); *Hill* v. *AMB Sport & Ent., LLC*, 2023 WL 2058066, at *6 (N.D. Ill. Feb. 16, 2023) (discrimination claims did not arise from forum contacts because "alleged discriminatory conduct occurred . . . where the employment decisions were made," not in forum where employee resided).[11]

---

[11] DiLaura's claim cannot "arise from" or "relate to" any NHL in-forum contacts. Compl. ¶¶ 77–81; *see WAIPU*, 2024 WL 4893266, at *14 (Plaintiffs' claims did not "arise from any identified activity in New York" because "neither of the individual Plaintiffs are from New York or played hockey in New York"); *In re NHL Players' Concussion Inj. Litig.*, 2019 WL 5079980, at *4 (no specific jurisdiction in Minnesota because plaintiff "never played for a Minnesota team in the NHL, and he does not allege he played an NHL game in Minnesota").

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

3.    Exercising Personal Jurisdiction over the NHL Would Be Unreasonable.

Plaintiffs have not carried their burden to establish that the NHL has sufficient minimum contacts with Washington. *Schwarzenegger*, 374 F.3d at 802. Even if they had, however, exercising jurisdiction over the NHL would not be reasonable. *Id.*

None of the factors considered by the Ninth Circuit favor jurisdiction here. *Core-Vent Corp.* v. *Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993) (extent of purposeful interjection, burden on defendant, forum state's interest in dispute, importance of forum to plaintiff, existence of alternative forum). The NHL's limited contacts with Washington demonstrate that "the extent of its *purposeful interjection* is slight," at best. *Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002). Efficiency also counsels against jurisdiction; witnesses and evidence relevant to Individual Plaintiffs' claim against the NHL are not located in Washington, but rather in New York, where the NHL is headquartered. *Id.* at 1489 (efficiency is based "primarily" on "where the witnesses and the evidence are likely to be located"); Daly Decl. ¶¶ 2, 10–14. Similarly, neither Individual Plaintiff resides in Washington, and they provide no evidence that Washington "is particularly convenient" for them. *Glencore*, 284 F.3d at 1126. There is no "evidence of assets" in Washington against which Plaintiffs "could enforce [their] award," as the NHL does not own real property or maintain bank accounts in Washington. *Id.*; Daly Decl. ¶ 6. As a result, Plaintiffs' "interest in 'convenient and effective' relief is frustrated, not promoted, by bringing suit" here. *Glencore*, 284 F.3d at 1126.

C.    **Plaintiffs Cannot Manufacture Personal Jurisdiction by Alleging a Conspiracy.**

Plaintiffs may attempt to establish personal jurisdiction over the NHL through the alleged in-forum contacts of the NHL's alleged co-conspirators. That effort would fail because so-called conspiracy jurisdiction is not recognized by the Ninth Circuit or Washington courts. *See Chirila* v. *Conforte*, 47 Fed. Appx. 838, 843 (9th Cir. 2002) (conspiracy jurisdiction has been "criticized by commentators" and the Ninth Circuit has rejected venue based on conspiracy); *Cascade Yarns, Inc.* v. *Knitting Fever, Inc.*, 2011 WL 2470671, at \*4 (W.D. Wash. June 17,

NHL'S MOTION TO DISMISS - 15
No. 2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

2011) ("[t]his Court rejects the theory" of conspiracy jurisdiction (citing cases)); *Silver Valley Partners, LLC* v. *De Motte*, 400 F. Supp. 2d 1262, 1268 (W.D. Wash. 2005) (similar); *Hewitt* v. *Hewitt*, 896 P.2d 1312, 78 Wn. App. 447, 453–54 & n.2 (1995) (rejecting "conspiracy/imputation theory of long-arm jurisdiction" as "unpersuasive").

## II.    Individual Plaintiffs Lack Article III Standing to Assert Their Claim Against the NHL.

The "irreducible constitutional minimum" of standing under Article III requires that plaintiffs have (i) "suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs lack Article III standing to assert their claim against the NHL because their alleged injuries cannot be traced to the NHL's challenged conduct.

Plaintiffs' alleged injuries all arise from playing in the CHL. Compl. ¶¶ 72, 78 (compensation fixed in the CHL); ¶¶ 74, 79 (involuntary drafts and trades in the CHL); ¶¶ 75, 80 (no compensation for CHL's alleged use of their name, image and likeness); ¶¶ 222, 248 (alleged physical injuries in the CHL).  None of these injuries can be traced to the NHL's challenged conduct—a provision of the NHL-CHL agreement that requires any CHL player who is drafted by the NHL but is "not retained by his NHL Club" to "be assigned to the Junior Club of the CHL for whom he last played or with whom he owes contractual obligations." Ex. 1 at 5–8; Compl. ¶ 271.  Neither Gould nor DiLaura was drafted to the NHL or assigned by an NHL club to their CHL team.  Their alleged injuries were incurred during the early stage of their junior careers, with no involvement from the NHL.

All that the Complaint can muster is that undefined and unidentified CHL players suffered "as a consequence of" the NHL-CHL Agreement because the NHL has allegedly "perpetuate[d]" those drafted players' "lack of freedom of movement" and "artificially depressed compensation even after the Player was drafted by an NHL Club and preventing AHL and ECHL clubs . . .

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

from competing to sign such Players." Compl. ¶¶ 319, 321.[12]  This does not suffice because named Individual Plaintiffs cannot piggy-back on the alleged injuries of the unnamed class members to establish Article III standing. *Martinez* v. *Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) ("plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 956–57 (S.D. Cal. 2012) (named plaintiffs did not have standing to assert claims against certain defendants where no named plaintiff actually subscribed to service provider).

Moreover, any injury Plaintiffs allegedly suffered due to the *CHL Defendants'* conduct cannot be traced to the provision of the NHL-CHL Agreement they challenge through their claim against the NHL. *Easter* v. *Am. West Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (plaintiffs failed to trace alleged injury-in-fact to conduct of certain defendants); *Cattie* v. *Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 944 (S.D. Cal. 2007) (injury not traceable to defendant where plaintiff had no "relationship at all" with defendant).  Accordingly, Plaintiffs lack Article III standing.

### III.    Individual Plaintiffs Lack Antitrust Standing to Assert Their Claim Against the NHL.

Separate from constitutional standing, in order to state a Sherman Act Section 1 claim, a plaintiff must have antitrust standing—that is, the plaintiff must be a "proper party to bring a private antitrust action." *Hogan* v. *Amazon.com, Inc.*, 2023 WL 3018866, at *3 (W.D. Wash. Apr. 20, 2023) (citations omitted).  To determine whether a plaintiff has antitrust standing, courts consider: (1) whether the plaintiffs suffered "antitrust injury," i.e., the type of injury the antitrust laws were intended to prevent; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages.

---

[12] Plaintiffs also allege that the NHL "controls" the AHL and ECHL and that the NHL has "agree[d] to restrict the AHL and ECHL from competing for Major Junior Players" through this provision. Compl. ¶¶ 272–73. "Conclusory allegations of dominion and control without any factual support are insufficient" to satisfy Article III standing, let alone to plead a conspiracy. *G.O. Am. Shipping Co., Inc.* v. *China COSCO Shipping Corp. Ltd.*, 2017 WL 6026959, at *3 (W.D. Wash. Dec. 5, 2017), *amended*, 2018 WL 9669746 (W.D. Wash. 2018); *Ferrie* v. *Woodford Rsch., LLC*, 2020 WL 3971343, at *8 (W.D. Wash. July 14, 2020) (rejecting allegations of "control" because they were "conclusory and do not support an alter ego theory").

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1    *Assoc. Gen. Contractors of Cal.* v. *Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519,

2    538–45 (1983); *City of Oakland* v. *Oakland Raiders*, 20 F.4th 441, 455 & n.10 (9th Cir. 2021).

3    Antitrust standing is "a question of law" that may be considered "at the outset." *Bubar* v. *Ampco*

4    *Foods, Inc.*, 752 F.2d 445, 449 (9th Cir. 1985). All of these factors weigh against Individual

5    Plaintiffs having antitrust standing to state a claim against the NHL.

6         First, Individual Plaintiffs fail to allege an antitrust injury caused by the NHL. *AGC*, 459

7    U.S. at 538–40. Antitrust injury requires "(1) unlawful conduct, (2) causing an injury to the

8    plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type

9    the antitrust laws were intended to prevent." *City of Oakland*, 20 F.4th at 456. Individual

10   Plaintiffs do not allege any injury caused by the NHL's alleged unlawful conduct—a contract

11   provision requiring CHL players drafted by NHL clubs to be assigned to their CHL clubs if they

12   do not make their NHL clubs' rosters. Ex. 1 at 5–8; Compl. ¶ 271. As explained above,

13   Individual Plaintiffs were never even drafted into the NHL, which means this contract provision

14   never applied to them, let alone caused them antitrust injury. And Individual Plaintiffs cannot

15   bootstrap the alleged injury of a player who was affected by such rule. *See Lorenzo* v. *Qualcomm*

16   *Inc.*, 603 F. Supp. 2d 1291, 1301–02 (S.D. Cal. 2009) (no antitrust standing for cell phone

17   purchasers who challenged discriminatory licensing of patents to chip manufacturers); *Hogan*,

18   2023 WL 3018866, at *3 (plaintiffs cannot establish antitrust injury where their alleged injuries

19   are allegedly "inextricably intertwined" with another group's).

20        The second factor weighs against antitrust standing because any alleged injury Individual

21   Plaintiffs suffered is too indirect and remote to confer antitrust standing. *City of Oakland*, 20

22   F.4th at 458 (courts analyze "chain of causation between [the plaintiff's] injury and the alleged

23   restraint of trade"). Individual Plaintiffs' alleged "harm may not be derivative and indirect or

24   secondary, consequential, or remote." *Id.* Rather, they must be injured at the "first step" of a

25   chain of causation to have antitrust standing. *AGC*, 459 U.S. at 534 ("The general tendency of

26   the law, in regard to damages at least, is not to go beyond the first step."); *In re Am. Express Anti-*

27   *Steering Rules Antitrust Litig.*, 19 F.4th 127, 139–40 (2d Cir. 2021) (applying "first step" rule).

NHL'S MOTION TO DISMISS - 18
No. 2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Plaintiffs' Complaint lacks any allegations showing injury at the first step, or any allegations showing how they personally and individually were harmed by *other* NHL-drafted-and-signed players being assigned to their CHL club. Even if they could articulate such a theory, this injury would be too attenuated to confer antitrust standing. *See Lucas* v. *Bechtel Corp.*, 800 F.2d 839, 844 (9th Cir. 1986) (too many "vaguely defined links" between alleged injury and alleged agreement to fix wages); *City of Oakland*, 20 F.4th at 460 ("too many speculative links in the chain of causation" between alleged anticompetitive conduct and injury); *Schwab Short-Term Bond Mkt. Fund* v. *Lloyds Banking Grp. PLC*, 22 F.4th 103, 116 (2d Cir. 2021) (applying first-step rule, affirming dismissal for lack of antitrust standing).

The remaining three factors also weigh against antitrust standing. The speculative nature of damages, the complexity in apportioning damages, and the possibility of duplicative recovery all exist here given the "indirectness of the alleged injury," and that "independent factors exist that may add to the speculativeness of the injuries," such as any alleged conduct by CHL Defendants. *Eagle* v. *Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987). Likewise, a court would have to apportion damages among absent class members—some of whom are allegedly directly affected and others who are not, weighing against antitrust standing. *See AGC*, 459 U.S. at 545 (no antitrust standing where court would have to identify and apportion damages among "directly victimized contractors" and "indirectly affected union entities").

## IV.    The Non-Statutory Labor Exemption Bars Individual Plaintiffs' Claim.

The NHL-CHL Agreement has been approved by the NHLPA and incorporated into the CBA between the NHL and NHLPA. Under the non-statutory labor exemption to the antitrust laws, Individual Plaintiffs' claims against the NHL should therefore be dismissed.

The non-statutory labor exemption "recognizes that, to give effect to federal labor laws and policies and to allow meaningful collective bargaining to take place, some restraints on competition imposed through the bargaining process must be shielded from antitrust sanctions." *Brown* v. *Pro Football, Inc.*, 518 U.S. 231, 237 (1996). Where, as here, competition for the labor of professional hockey players is organized around a relationship between "unions and employers

NHL'S MOTION TO DISMISS - 19
No. 2:24-cv-02135-TL

**FENNEMORE CRAIG, P.C.**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

who are parties to collective bargaining activities and agreements," that collective bargaining relationship permits the NHL and its clubs to act jointly regarding "mandatory subjects of collective bargaining" without risking antitrust liability. *Phoenix Elec. Co.* v. *Nat'l Elec. Contractors Ass'n*, 81 F.3d 858, 860 (9th Cir. 1996). Courts dismiss claims based on the non-statutory labor exemption where (1) the alleged restraint primarily affects the parties to the agreement, (2) the agreement concerns wages, hours, or conditions of employment that are mandatory subjects of collective bargaining, and (3) the agreement is produced from bona fide, arm's-length collective bargaining. *Phoenix Elec.*, 81 F.3d at 861. The non-statutory labor exemption bars Individual Plaintiffs' claim here.

*First*, the rule at issue has been agreed to by the NHLPA, the "exclusive bargaining representative of all present and future Players employed as such" on an NHL team. Ex. 4 at 10; Daly Decl. ¶ 13. The rule applies to a CHL player who is drafted by the NHL and signs an NHL contract—precisely a "present" or "future" player "employed as such" in the NHL. Ex. 1 at 5–6. It thus primarily affects only players who are part of the NHLPA bargaining unit covered by the CBA. *See* Ex. 4 at 6 (defining "Player(s)" as "a hockey player who is party to an SPC [Standard Player Contract], a Rookie, Unsigned Draft Choices, and Free Agents"). Plaintiffs implicitly acknowledge as much—as they must—when alleging that CHL players are not "represented by a labor union in their relations with the Major Junior Defendants," conspicuously leaving the NHL out of that allegation. Compl. ¶¶ 50, 194. Plaintiffs also recognize that CHL players who are affected by the at-issue rule by definition are drafted and signed by NHL clubs, leaving no doubt these players are within the collective bargaining unit. *Id.* ¶ 271 & n.10. In any event, the non-statutory labor exemption applies not only to current players, but also to the claims of prospective players. *Nat'l Hockey League Players Ass'n* v. *Plymouth Whalers Hockey Club*, 419 F.3d 462, 467–68, 475 (6th Cir. 2005) (using the NHL CBA as basis to apply non-statutory labor exemption to claims of prospective NHL players); *Clarett* v. *Nat'l Football League*, 369 F.3d 124, 140 (2d Cir. 2004) ("Simply because the eligibility rules work a hardship on prospective rather than current employees does not render them impermissible."); *Wood* v. *Nat'l*

NHL'S MOTION TO DISMISS - 20
No. 2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*Basketball Ass'n*, 809 F.2d 954, 960 (2d Cir. 1987) (NBA draft and salary cap rules were exempt from antitrust laws even though "they affect employees outside the bargaining unit").

*Second*, the rule here covers a "mandatory subject of collective bargaining." *Phoenix Elec.*, 81 F.3d at 862.  Like other professional sports draft- and transfer-related rules, the rule at issue is "a quite literal condition for initial employment and for that reason alone" is a "mandatory bargaining subject."  *Clarett*, 369 F.3d at 139, 140 (conditions which affect "the market for entering players" and "affect the job security of veteran players" are mandatory subjects of collective bargaining); *see also Plymouth Whalers*, 419 F.3d at 474–75 (NHL draft rules); *Silverman* v. *Major League Baseball Player Relations Comm., Inc.*, 67 F.3d 1054, 1061 (2d Cir. 1995) (professional baseball rules related to player transfers, including free agency, anti-collusion provision in players' contracts, and reserve system held mandatory bargaining subject); *Wood*, 809 F.2d at 961–62 (professional basketball rules related to draft and player transfers, including teams' right of first refusal held mandatory bargaining subjects); *McCourt* v. *Cal. Sports, Inc.*, 600 F.2d 1193, 1203 (6th Cir. 1979) (NHL reserve system requiring inter-club compensation for signing free agents held mandatory bargaining subject).

*Third*, the CBA and NHLPA's approval of the NHL-CHL Agreement is the product of "bona fide, arm's-length collective bargaining." *Phoenix Elec.*, 81 F.3d at 861.  Individual Plaintiffs make no allegation to the contrary—because they cannot do so.  The provision of the NHL-CHL Agreement that Plaintiffs challenge is expressly set forth in the CBA.  Article 8.7 of the CBA provides that if, for example, an 18- or 19-year-old former Major Junior player signs a contract with the NHL club that drafted him, but he does not make the club's roster, the NHL club "must first offer him to the club from which he was claimed," i.e., his Major Junior club, "before it may Loan him." Ex. 4 at 21.  Additionally, Article 9.1(d)(iv) of the CBA states that the "prohibition on sending underage players to minors" like the AHL and ECHL is "confirmed and affirmed" by the CBA.  *Id.* at 24.  The NHL-CHL Agreement is also incorporated into the CBA via the 2005 Letter Agreement and the 2013 Letter Agreement.  *See supra* at 8.  The NHLPA's 2022 approval of the NHL-CHL Agreement also makes clear that the NHL-CHL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Agreement is incorporated into the CBA—a fact Plaintiffs conveniently omit from their Complaint even though they have documents showing this is the case. Daly Decl. ¶¶ 13–14; Ex. 5. Plaintiffs thus do not allege—nor could they—that these provisions of the CBA were "the product of anything other than legitimate negotiations." *Phoenix Elec.*, 81 F.3d at 862.[13]

## V.    The FTAIA and Principles of Comity Require Dismissal.

As the CHL Defendants' motion to dismiss more fully explains, Individual Plaintiffs' claim must be dismissed under the FTAIA because almost all of the injuries allegedly caused by the NHL's conduct were suffered in Canada. *See* Dkt. #139 at p. 6–13. And to the extent that Plaintiff Gould alleges injuries related to the single season that he allegedly played in the United States, his claim should be dismissed based on principles international comity. *See id.* at 13–14.

## CONCLUSION

For the foregoing reasons, the NHL respectfully requests that the Court dismiss Individual Plaintiffs' claim as to the NHL.

---

[13] Plaintiffs may contend the Court may not consider the CBA or related side letters, particularly given Plaintiffs removed references to the CBA from their Complaint. Plaintiffs' prior references to the CBA are judicial admissions of which the Court can take judicial notice. *Harris* v. *Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Tikotzky* v. *Kai Data, LLC*, 2021 WL 3924757, at *4 (C.D. Cal. June 23, 2021) ("where allegations in operative pleadings do not contradict earlier pleadings, but instead merely omit previously-pleaded material which harms a plaintiff's case—such allegations are judicial admissions that a plaintiff has not cured").

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

DATED: February 13, 2025.

FENNEMORE CRAIG, P.C.

By:     s/ James P. Savitt
        James P. Savitt, WSBA #16847
        Sarah Gohmann Bigelow, WSBA #43634
        1425 Fourth Avenue, Suite 800
        Seattle, WA 98101-2272
        Tel: (206) 749-0500
        Fax: (206) 749-0600
        Email: jsavitt@fennemorelaw.com
        Email: sgohmann@fennemorelaw.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:     s/ Andrew G. Gordon
        Andrew G. Gordon (*pro hac vice*)
        1285 Avenue of the Americas
        New York, NY 10019-6064
        Tel: (212) 373-3000
        Fax: (212) 757-3990
        Email: agordon@paulweiss.com

        William A. Isaacson (*pro hac vice*)
        Martha L. Goodman (*pro hac vice*)
        2001 K Street, NW
        Washington, D.C. 20006-1047
        Tel: (202) 223-7300
        Fax: (202) 223-7420
        Email: wisaacson@paulweiss.com
        Email: mgoodman@paulweiss.com

        *Attorneys for Defendant National Hockey League*

        I certify that this memorandum contains 8,383 words, in compliance with the Local Civil Rules

NHL'S MOTION TO DISMISS - 23
No. 2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**CERTIFICATION OF CONFERRAL**

     I hereby certify that on Monday, February 10, 2025, I conferred with counsel for the Plaintiffs, Wyatt Fore (among others) by videoconference.  During this meet and confer, I explained the basis for this Motion to Dismiss and I requested that Plaintiffs take action to obviate the need for this Motion by dismissing the NHL or amending their Complaint.  Plaintiffs did not agree to dismiss or to amend in order to potentially avoid the need for this Motion.


By:    */s/ Martha L. Goodman*
       Martha L. Goodman (*pro hac vice*)
       2001 K Street, NW
       Washington, D.C. 20006-1047
       Tel: (202) 223-7300
       Fax: (202) 223-7420
       Email: mgoodman@paulweiss.com

CERTIFICATION OF CONFERRAL
2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1

## **CERTIFICATE OF SERVICE**

2    I hereby declare under penalty of perjury under the laws of the United States of America

3 that on this date, the foregoing document was filed electronically with the Court and thus served

4 simultaneously upon all counsel of record.

5    I declare under penalty of perjury that the foregoing is true and correct.

6    EXECUTED on February 13, 2025.

7

8

9    _____
     Amanda Saeteurn

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE
2:24-cv-02135-TL

FENNEMORE CRAIG, P.C.
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500